THOMPSON et al., Appellees,

v.

HAYSLIP et al., Appellants.

[Cite as *Thompson v. Hayslip* (1991), 74 Ohio App.3d 829.]

Court of Appeals of Ohio,
Lawrence County.

No. 1959.

Decided July 19, 1991.

*David R. Dillon,* for appellees.

*David H. McCown,* for appellants.

HARSHA, Judge.

This is an appeal from a judgment entered in favor of appellees upon their complaint seeking quiet title in the Lawrence County Court of Common Pleas. Appellants assign the following errors:

"I. The court erred in determining that plaintiff had established adverse possession rights.

"II. The court erred in rejecting the survey findings of defendant's witness surveyor, Robert Rowe.

"III. The court erred in overruling the motion of the defendant for a new trial."

Appellees filed a complaint to quiet title on April 14, 1987, asserting that appellants were unlawfully using part of appellees' land and that appellees established title to the land through adverse possession. They further sought and received a temporary restraining order enjoining appellants from using and/or barricading appellees' realty. Appellants answered and asserted a counterclaim alleging appellees were trespassing upon appellants' land. A trial to the court was held on February 13, 14 and April 18, 1989. The court issued its findings and decision which established a property line in appellees'

favor and held that appellees proved that they had title through adverse possession. Proposed findings of fact and conclusions of law were submitted by both parties, with the court adopting the appellees' version on November 3, 1989. On December 14, 1989 the court put on an entry incorporating its findings of fact and conclusions of law and containing plats of the newly determined property line.

Appellants filed a motion for new trial on December 21, 1989. They primarily claimed that they were entitled to a new trial under Civ.R. 59(A)(8), as they had newly discovered evidence that was not previously discoverable by the exercise of reasonable diligence. They also claimed they were subjected to accident or surprise which ordinary prudence could not have guarded against and were thus entitled to a new trial under Civ.R. 59(A)(3). In their motion for new trial, appellants claimed that prior to trial, they were informed by the Lawrence County Engineer's Office that there was no information on file establishing the prior location of a road which was a boundary of the property. After trial, appellants checked with the Ohio Department of Transportation and discovered that there was indeed a record in the County Engineer's Office purporting to establish the previous location of the road. Appellants claimed that this information was determinative of the case and entitled them to judgment in their favor. Appellants also claimed that the misinformation from the engineer's office constituted accident and surprise entitling them to a new trial. Appellees countered by asserting that appellants had not shown that this new evidence could not have been discovered prior to trial if appellants had exercised reasonable diligence. On April 26, 1990, the court decided that the new information did not warrant a new trial. This decision was reflected in the court's June 6, 1990 judgment entry which denied the motion for new trial. Appellants filed a notice of appeal from the December 14, 1989 entry and the June 6, 1990 entry.

At trial, it was revealed that this dispute involved the location of a common boundary between two adjoining tracts of land. The tracts were subdivided from the same parcel in the year 1873. The major factor contributing to the dispute is the inadequate legal description contained in the original deed dividing the two parcels. Additional facts will be considered under the appropriate assignment of error.

Appellants' first assignment of error asserts that the trial court erred in determining that appellees had established adverse possession rights. The essence of appellants' argument is that the trial court's judgment that appellees held title to the contested property is contrary to the manifest weight of the evidence as appellees failed to prove possession that was "adverse" or "hostile." It is appellants' contention that the mowing of grass

and harvesting of hay are insufficient as a matter of law to establish possession as being "adverse" or "hostile."

The burden of proving adverse possession falls upon the party asserting title through such possession. The elements of adverse possession and the quantum of proof needed to establish those elements are succinctly set forth by the Second District Court of Appeals in *Demmitt v. McMillan* (1984), 16 Ohio App.3d 138, 16 OBR 146, 474 N.E.2d 1212:

"In order to prevail on a claim for adverse possession in Ohio the claimant must establish that his possession of the land was open, notorious, exclusive, adverse, hostile, and continuous for more than twenty-one years. See *Clark v. Potter* (1876), 32 Ohio St. 49; *Fulton v. Rapp* (App.1950), 59 Ohio Law Abs. 105 [45 O.O. 494, 98 N.E.2d 430]. See, also, R.C. 2305.04 (establishes twenty-one year statutory period). Although the Supreme Court has not addressed the issue it would appear this state has adopted the view that such elements must be established by a mere preponderance of the evidence. See *McInnish v. Sibit* (1953), 114 Ohio App. 490 [19 O.O.2d 476, 183 N.E.2d 237]; *Rosenblum v. Wilkes* (App.1928), 6 Ohio Law Abs. 323." *Demmitt* at 140, 16 OBR at 148, 474 N.E.2d at 1215. See, also, *State ex rel. A.A.A. Investments v. Columbus* (1985), 17 Ohio St.3d 151, 153, 17 OBR 353, 355, 478 N.E.2d 773, 775; *Dept. of Adm. Serv. v. Morrow* (1990), 67 Ohio App.3d 225, 586 N.E.2d 259; Boyer, Survey of the Law of Property (3 Ed. 1981) 236–237.

Appellants assert that "cutting hay, gathering natural crop, mowing grass and cutting weeds" cannot be the basis for an adverse possession claim in Ohio. In order to establish this proposition they cite *Oeltjen v. Akron Associated Investment Co.* (1958), 106 Ohio App. 128, 6 O.O.2d 399, 153 N.E.2d 715; and *Meyer v. Pockros* (1924), 18 Ohio App. 506. In *Meyer*, the Court of Appeals for Hamilton County stated: "Plaintiff testifies that she had taken care of the [land] in the mowing of the grass, keeping the weeds down, etc. This is not sufficient to establish title by adverse possession." *Id.* at 511. The Summit County Court of Appeals expounded upon the point in *Oeltjen:*

"In Ohio, as in the majority of states where the matter has been before the courts, it has been held that one does not have adverse possession of land by a use consisting of cutting hay or gathering natural crop or mowing grass and cutting weeds. *Meyer v. Pockros*, 18 Ohio App. 506; 170 A.L.R. 863, and authorities there cited.

"The reported cases disclose innumerable situations where claims of title by adverse possession had been reported. Our examination of these cases convinces us that *each claim must be decided upon its peculiar facts;* that there is no definite pattern which will permit us to fit the facts into a mold and

find for or against a claim of adverse possession. See: 2 Corpus Juris Secundum, Adverse Possession, Section 27 et seq., and authorities there cited." (Emphasis added.) *Oeltjen*, 106 Ohio App. at 130–131, 6 O.O.2d at 400, 153 N.E.2d at 717.

Thus, rather than adopt a general rule that the cutting of hay and the like are insufficient bases for a claim of adverse possession, we believe the result in each case is controlled by the particular facts present.

■ Avoidance of a "bright line" rule regarding such activities as the cutting of hay in these cases allows the court to consider the unique nature of the real property in question. This is necessary since a use which notifies an owner in one locale that another is asserting an adverse claim to his land, may not be a sufficient use to so notify an owner in another area. See, generally, 3 American Jurisprudence 2d (1986) 112–113, Adverse Possession, Sections 22 and 23.[1] This principle has been recognized in Ohio. In *Vanasdal v. Brinker* (1985), 27 Ohio App.3d 298, 27 OBR 343, 500 N.E.2d 876, the Ninth District Court of Appeals held that "the use of land requisite to adverse possession is such use as would be made of that land by the owner." *Id.* at 299, 27 OBR at 344, 500 N.E.2d at 878, citing *Fulton v. Rapp* (App.1950), 59 Ohio Law Abs. 105, 107, 45 O.O. 494, 495, 98 N.E.2d 430, 431. If these uses are of the type which an owner would conduct on his land, then use of the land by another for those purposes is sufficient to put the true owner on notice that someone is asserting an adverse/hostile claim to the property. *Id.*

■ Having determined that the trial court did not err as a matter of law in considering the specific uses as indicative of adverse possession, we must now determine whether the court's conclusion that appellees had obtained title by

---

1.  Therein it is stated in pertinent part:
    Section 22. Effect of nature, character, and location of property
    "In determining what amounts to actual possession of real property, considerable importance must be attached to the nature, character, and location of the property. It has been said that the rule requiring actual possession is to be applied reasonably in view of the location and character of the land claimed."
    Section 23. Effect of adaptability of property
    "In determining what amounts to an actual possession of real property, considerable importance must be attached to the use to which it can be applied, or to which the claimant may choose to apply it. To establish adverse possession, it has been said that the claimant must appropriate the real property to some purpose to which it is adapted. It has been said also that it is sufficient that possession be shown by the continued use of the land for purposes for which it is susceptible. It is sufficient if the acts of ownership are of such character as to openly and publicly indicate an assumed control or use such as is consistent with the character of the premises in question. The standard to be applied to any particular tract of land is whether the possession comports with the ordinary management of similar lands by their owners; if it does, satisfactory evidence of adverse possession is furnished."

adverse possession was contrary to the manifest weight of the evidence. In making this determination, we are bound by the following standard of review:

"Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *State ex rel. Pizza v. Strope* (1990), 54 Ohio St.3d 41, 46, 560 N.E.2d 765, 769–770.

The testimony at trial revealed that in the late 1920s and early 1930s, the parties' predecessors in title honored the natural brush line ultimately chosen by the trial court as the boundary line. The evidence was that the owners of each parcel farmed their respective sides of that line. During the years since that time, hay was cut from the appellees' side of the line two or three times per year, depending upon weather conditions. The evidence also revealed that during a few years, appellees' predecessors in title grew beans, watermelons and corn upon portions of the disputed property. It was further revealed that every five to ten years the disputed land was fertilized, limed and disked by appellees' predecessors in title. Those areas in dispute that were not farmed in this manner were mowed and cared for by appellees' predecessors. The evidence is clear that this activity took place at least as early as 1952 when appellees' father purchased the land.

The evidence also revealed that appellants and their predecessors in title made identical usage of the property upon their side of the brushline. Appellants make an effort to dissect the land into various "areas" and assert that appellees did not establish adverse possession as to each area. Again, judgments supported by some competent, credible evidence as to each element will not be overturned upon review as being against the manifest weight of the evidence. *Strope, supra.* The trial court heard the descriptions of the witnesses after having viewed the land. Under these circumstances, it appears that there was some competent, credible evidence upon which the trial court could have found that appellees and their predecessors in title put the disputed land to the same use its true owner would have put the land (primarily harvesting hay). We cannot say that the decision of the trial court is against the manifest weight of the evidence. The cutting of hay in this case was a satisfactory use of the land to perfect a claim of adverse possession. Cf. *Weiss v. Meyer* (1981), 208 Neb. 429, 303 N.W.2d 765.[2] Accordingly, appellants' first assignment of error is overruled.

---

**2.** The Supreme Court of Nebraska held, *inter alia,* that (1) annual production of hay by defendant or those under his direction for sixty or more years was more than an occasional trespass and was sufficient to constitute adverse possession; and (2) if land is used for one or more of the major purposes for which it may by its nature be adapted, that use will be

Appellants' second assignment of error asserts that the trial court "erred in rejecting the survey findings of defendant's witness surveyor * * *." As indicated above, a major factor in the dispute was the inadequacy of legal description found in the original deed dividing the two parcels. Appellants' surveyor attempted to show the location of the "true" property line as established in the original deed. Based upon the inadequate property description and the movement of the old county road (currently the state highway), the task of determining the originally intended property line was difficult. Using principles of surveying, appellants' surveyor set a line that he believed to be the property line. He did this by trying to maintain the unknown line as near to parallel with the known line as possible, while at the same time, maintaining the acreage stated in the deed (five acres, "more or less"). He was unable to establish a parallel line or to obtain a line that resulted in a five-acre parcel. He admitted that the best he could do was make an "educated guess" based upon his experience and the rules established for surveyors.

Appellants further argue that the trial court erred in accepting the line established by appellees' surveyor. They assert that said line was based upon hearsay testimony that was not properly admissible under Evid.R. 803(19). However, since individuals upon whom this witness relied in forming his opinion also testified without major discrepancy at trial, appellants' hearsay argument cannot prevail. More important, appellees' surveyor did not attempt to establish the property line from the inadequate description in the deed. He admitted it could not be done. He established a line based upon the use of the property as he was told by prior owners and possessors. This line conformed with the line ultimately chosen by the court.

■ Normally, the trial court would establish the original boundary line in order to decide the issue of present ownership under an adverse possession claim. In this case, in essence, the court said, "I can't tell where the original line was because the evidence on both sides is so unreliable and conflicting. However, it doesn't matter where the original line was because the parties and their predecessors have established current ownership by virtue of their use of the land." In reviewing the court's judgment, it is clear that the court ruled on the basis of use and possession, not by virtue of the original location of the property line. In short, it appears that the court felt Hayslip's expert's opinion regarding the original line was not dispositive of the issue of current ownership.

---

sufficient to establish continuity of possession, provided such use is sufficient to put the record title holder on notice. *Weiss v. Meyer* (1981), 208 Neb. 429, 303 N.W.2d 765.

We do note, however, that the fact that the trial court speaks of "corrected property descriptions" and title by adverse possession implies that appellants' predecessors once held title to the disputed land. In any event, since the trier of fact is free to believe all, some, or none of an expert's testimony, see *Vetter v. Hampton* (1978), 54 Ohio St.2d 227, 230, 8 O.O.3d 198, 200, 375 N.E.2d 804, 806; *Gannett v. Booher* (1983), 12 Ohio App.3d 49, 51, 12 OBR 190, 192, 465 N.E.2d 1326, 1330; and the Staff Note to Evid.R. 702, we see no merit in this assignment even assuming *arguendo* that the court did adopt Thompson's expert's opinion as describing the *original* boundary line (a conclusion which is doubtful in light of the judgment of adverse possession since that doctrine has no application to land which one already owns).

Finally, appellants assert that the trial court erred by overruling their motion for new trial. That motion was based upon Civ.R. 59(A)(3) and (A)(8). In relevant part, Civ.R. 59 states:

"A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds:

" * * *

"(3) Accident or surprise which ordinary prudence could not have guarded against;

" * * *

"(8) Newly discovered evidence, material for the party applying, which with reasonable diligence he could not have discovered and produced at trial[.]"

Under Civ.R. 59(A)(8), appellants claimed to have discovered evidence at the Lawrence County Engineer's Office which established the location of "the old county road." They claim they were originally told by that office that there was no such information on file. After trial, appellants checked with the state of Ohio Department of Transportation and learned that the county engineer's office *did* have a map of the prior road's location. They obtained the map and moved for a new trial based upon the "newly discovered evidence." The court heard the motion and entered a decision which stated that the new information was "not of such a stature to warrant a new trial." The motion was denied by entry on June 6, 1990.

When reviewing the denial of this motion for new trial, we must limit our review to a determination of whether the trial court abused its discretion by entering the denial. In *Taylor v. Ross* (1948), 150 Ohio St. 448, 38 O.O. 314, 83 N.E.2d 222, paragraph two of the syllabus, the Supreme Court stated:

"The granting or refusing of a new trial on the ground of newly discovered evidence rests largely within the sound discretion of the trial court; and when

such discretion has not been abused, reviewing courts should not interfere. (Paragraph two of the syllabus in the case of *Domanski v. Wolda,* 132 Ohio St. 208 [7 O.O. 462, 6 N.E.2d 601], approved and followed.)"

Absent an abuse of discretion by the trial court, we cannot reverse the judgment. The term "abuse of discretion," when applied to an entry by a trial court, refers to an unreasonable, arbitrary or unconscionable attitude by the court in making its ruling. See *Cedar Bay Constr., Inc. v. Fremont* (1990), 50 Ohio St.3d 19, 22, 552 N.E.2d 202, 205.

■ Civ.R. 59(A)(8) permits the granting of a new trial when the newly discovered evidence, with the exercise of reasonable diligence, could not have been discovered and produced at trial. Appellants failed to set forth in their motion for new trial (and upon appeal) the reasons they could not, with the exercise of reasonable diligence, have obtained the new information before trial. As appellants failed to bring any such proof before the trial court, we cannot say that the trial court's decision was unreasonable, arbitrary or unconscionable. Furthermore, since the court's judgment was not based upon establishing the location of the original property line, consideration of the new evidence would not have resulted in a different decision. There was no abuse of discretion by the trial court in denying appellants' motion pursuant to Civ.R. 59(A)(8).[3] The third assignment of error is overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

STEPHENSON, P.J., and GREY, J., concur.

---

**3.** Appellants also asserted in their motion below that they were entitled to a new trial under Civ.R. 59(A)(3) because the misinformation from the county engineer's office constituted "[a]ccident or surprise which ordinary prudence could not have guarded against." They have chosen not to brief this issue upon appeal. If they had done so, our result would be the same as they failed to show the trial court why ordinary prudence would not have guarded against the late discovery of the evidence. Prudence demanded appellants make their final investigations before trial rather than after it.