PAYNE et al., Appellees,

v.

CARTEE, Appellant.

[Cite as *Payne v. Cartee* (1996), 111 Ohio App.3d 580.]

Court of Appeals of Ohio,
Fourth District, Ross County.

No. 95CA2135.

Decided June 10, 1996.

582

*Charles R. Van De Carr,* for appellee Ross County Department of Human Services.

*Kellenberger, Nusbaum & Wissler* and *Scott W. Nusbaum,* for appellant.

---

*Per Curiam.*

This is an appeal from a judgment entered by the Ross County Court of Common Pleas, Juvenile Division, finding that a parent-and-child relationship had been established between appellant Mark Cartee and appellee Mark Payne.[1] The

---

[1]. Appellant refers to Mark Payne's mother as the appellee. However, this case was initiated in the name of "Mark Payne, A Minor By and Through Janet S. Waters Mother and Next Friend of Said Minor," and not Janet Waters individually.

court also ordered appellant to pay prospective child support and reimburse the county's human services department for the payment of birth expenses.

Initially, Janet Waters, Mark Payne's mother, filed a bastardy action against appellant Mark A. Cartee in the Chillicothe Municipal Court on July 8, 1981. Mark Payne was born on August 16, 1981. The municipal court action was later transferred to the Ross County Court of Common Pleas, General Division. The bastardy action was dismissed by the general division with prejudice on February 27, 1984. A compromise agreement regarding that action was executed by appellant and Waters on March 9, 1984.

On March 25, 1993, Waters, as "mother and next friend" of Mark Payne, and appellee, Ross County Department of Human Services ("department"), filed an action to establish a father-child relationship in the Ross County Court of Common Pleas, Juvenile Division.

Appellant then filed a motion for relief from judgment in the general division on April 29, 1994, to reopen the original bastardy action, vacate the previous dismissal entry and approve the compromise agreement. By *nunc pro tunc* entry filed July 11, 1994, the general division ordered the bastardy action to be reopened. Mark Payne was joined as a party in that action and a guardian *ad litem* was appointed.

A parentage trial was subsequently held in the juvenile division on July 26, 1994. The court issued its decision on December 15, 1994, ordering appellant to pay prospective child support in the amount of $108.77 per week plus poundage. The department was also awarded $833.24, one-half the cost of birthing expenses paid by the department.

On December 28, 1994, appellant filed a request with the juvenile division to issue findings of fact and conclusions of law. He also filed objections to the referee's report on the same day.

On January 31, 1995, the general division set aside the previous dismissal entry and reopened the case since appellant's motion for relief from judgment asserted a meritorious defense to the subject claims. Furthermore, the court approved the parties' compromise agreement as being in the best interests of the child, Mark Payne.

The juvenile division entered its findings of fact and conclusions of law on April 6, 1995. Appellant's objections to the referee's report were subsequently overruled by the juvenile division on May 31, 1995.

Based on the general division's entry approving the 1984 compromise agreement, appellant filed a motion for a new trial on June 13, 1995, in the juvenile division on the ground of newly discovered evidence. The juvenile division overruled this motion on July 27, 1995.

On August 18, 1995, appellant timely filed a notice of appeal from the juvenile division's December 15, 1994 final judgment establishing the father-child relationship, as well as its July 27, 1995 final judgment overruling his motion for a new trial.

## I

"The trial court erred to the prejudice of the appellant and abused its discretion by ordering appellant to pay birth expenses and child support to appellee [department], in derogation of Ohio Revised Code Section 3111.19."

■ Generally, the abuse-of-discretion standard applies when an appellate court reviews the propriety of a trial court's determination in matters involving child support. *Booth v. Booth* (1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028, 1030–1031. Since trial courts must use their discretion in order to do what is fair and equitable, given the facts and circumstances of each individual case, this court will not disturb their decision on appeal unless the decision constitutes more than a mere error of judgment. *Id.* That is, the trial court's attitude must be unreasonable, arbitrary or unconscionable. *Id.,* quoting *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142.

■ In this assignment of error, appellant argues that the trial court erred by ordering him to pay prospective child support on behalf of his son and awarding an amount to the department for maternity expenses. This was allegedly improper due to the terms of the 1984 agreement executed, pursuant to R.C. 3111.19, by appellant and his son's mother to compromise the original bastardy action. Specifically, this statute provides in pertinent part:

"After an action [to determine the existence of a father and child relationship] has been brought and before judgment, the alleged father and the mother, subject to the approval of the court, may compromise the action by agreement in which the parent and child relationship is not determined but in which a specific economic obligation is undertaken by the alleged parent in favor of the child." (Emphasis added.)

As part of their compromise agreement in the original case, Mark Payne's mother, individually, agreed not to institute future paternity proceedings against appellant. She also agreed not to bring any further claim against his future earnings or income. Finally, she recognized that she had no right to recover hospital and medical expenses associated with the birth of her son because such expenses had been paid by welfare.

The instant paternity action, however, was brought on behalf of appellant's son pursuant to R.C. 3111.04(A). The department was named as a party in order to recover the maternity expenses it had incurred. According to R.C. 3111.13(C), a

judgment determining the existence of a father-child relationship may contain provisions directed against the father concerning his duty of support. This subsection also provides that the judgment shall direct the father to pay all or part of the reasonable expenses of the mother's pregnancy or confinement. In addition, R.C. 3111.15(A) expressly states that a father's obligations may be enforced by the child or a public authority that has furnished the reasonable expenses of pregnancy, confinement or support in the same proceeding that determined parentage.

Moreover, the case of *Birkey v. Nolletti* (Apr. 18, 1990), Wayne App. No. 2506, unreported, 1990 WL 50046, is strikingly similar to the case at bar. In that case, a mother filed a bastardy action in 1977. She later signed a compromise agreement and dismissed the action in 1978. Eight years later in 1986, the mother, as next friend and on behalf of her minor child, filed a separate action under R.C. Chapter 3111. The appellate court affirmed the lower court's denial of the father's motion for summary judgment. The court held that it was improper to dismiss any action the mother currently filed on the child's behalf since the child was not a party to the earlier compromise and settlement.

Based on the above authority, this court does not believe that the execution of a compromise agreement between a mother and alleged father, pursuant to R.C. 3111.19, bars a subsequent award of support on behalf of their child and maternity expenses on behalf of the department pursuant to R.C. 3111.13(C).

For the foregoing reasons, the juvenile court did not abuse its discretion by ordering appellant to pay prospective child support on behalf of his son and awarding the department an amount for maternity expenses. Accordingly, appellant's first assignment of error is therefore overruled.

## II

"The trial court erred to the prejudice of the appellant and abused its discretion by failing to apply the doctrine of res judicata to appellees' * * * paternity action since the parties involved in both actions are in privity and the issues involved in both actions are identical."

█ This court has recognized that a determination of whether an action is barred by the doctrine of *res judicata* is a question of law which an appellate court must resolve without deference to the decision of the lower court. *Ray v. Stepp* (Aug. 4, 1995), Jackson App. No. 95CA758, unreported, 1995 WL 470193; *J.R. Mason, Inc. v. S. Bloomfield* (Apr. 4, 1995), Pickaway App. No. 94CA13, unreported, 1995 WL 149100; *In re Estate of Frazier* (Feb. 16, 1995), Ross App. No. 93CA1973, unreported, 1995 WL 75399. Accordingly, this court must

conduct a *de novo* review of the *res judicata* issue in order to resolve appellant's second assignment of error.

■ The doctrine of *res judicata* was summarized by the Supreme Court of Ohio in *Whitehead v. Gen. Tel. Co.* (1969), 20 Ohio St.2d 108, 49 O.O.2d 435, 254 N.E.2d 10. Specifically, the court held that a final judgment rendered upon the merits by a court of competent jurisdiction is conclusive of rights as to the parties and their privies, and is a complete bar to any subsequent action upon the same cause of action between the parties or those in privity with them. *Id.* at paragraph one of the syllabus.[2]

■ The Supreme Court later held that the doctrine could apply to a paternity proceeding where there is an identity of issues and an identity of parties or persons in privity with parties. *Johnson v. Norman* (1981), 66 Ohio St.2d 186, 190, 20 O.O.3d 196, 198–199, 421 N.E.2d 124, 126–127. However, the court noted that privity does not generally arise merely from the relationship between parent and child. *Id.* Therefore, although a mother's claim and her child's claim relate to the same subject matter, the claims themselves are separate and distinct. *Id.*

The court in *Johnson* was considering the same bastardy statute as involved in the original general division action herein. The purpose of the bastardy statute was to provide a remedy for the unmarried mother of a child born out of wedlock. Thus, the child was not a party to the action. *Id.* at paragraph one of the syllabus. However, the court recognized that despite being excluded from coverage under the statute, the child had a common-law right of action against the alleged father for support and maintenance. *Id.* at paragraph two of the syllabus. Finally, the court held that a mother's dismissal of an action under the statute with prejudice did not bar her child's separate common-law action for support and maintenance. *Id.* at paragraph three of the syllabus.

Ohio's old bastardy statute was amended in 1982 to create the paternity provisions as they exist today at R.C. Chapter 3111. One effect of the modern

---

2. But, see, the Supreme Court of Ohio's recent opinion in *Grava v. Parkman Twp.* (1995), 73 Ohio St.3d 379, 653 N.E.2d 226, modifying paragraph one of the syllabus in *Whitehead*. There the court held that "[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Grava*, syllabus, approving and adopting 1 Restatement of the Law 2d, Judgments (1982), Sections 24–25. We note that the court's opinion does not modify that part of paragraph one of the syllabus in *Whitehead* requiring an identity or privity of parties. Moreover, Comment *a* to Section 24 of the Restatement of Judgments, *supra*, at 198, expressly states that "[i]t should be noted, however, that if more than one party has a right to relief arising out of a single transaction, each such party has a separate claim for purposes of merger and bar." Therefore, the court's opinion in *Grava* does not affect our decision in this case regarding the distinct claims of Mark Payne and his mother.

version of R.C. 3111.04 is to create a statutory cause of action for a child against the alleged father for maintenance and support. Consistent with the old provisions, courts recognize that the child has a separate and distinct claim for support from that of the mother. *Park v. Ambrose* (1993), 85 Ohio App.3d 179, 185, 619 N.E.2d 469, 473–474; *Lindsay v. Cosby* (Jan. 25, 1991), Richland App. No. CA–2776, unreported, 1991 WL 12808; *Rees v. Heimberger* (1989), 60 Ohio App.3d 45, 46, 573 N.E.2d 189, 191–192. Moreover, the courts have also held that a mother's settlement of a claim for support in no way affects the child's action against the father for maintenance and support. *Stephens v. Paris* (July 12, 1993), Clark App. No. 3024, unreported, 1993 WL 265414; *Carpenter v. Digman* (July 22, 1991), Knox App. No. 91–CA–4, unreported, 1991 WL 148107; *Birkey, supra.*

■ Therefore, as a threshold matter in determining whether to apply the doctrine of *res judicata* in this case, we must first determine whether there is an identity of parties, or persons in privity with parties, in the actions. As discussed above, the initial bastardy case in the general division was filed by Janet Waters, individually, against appellant Mark Cartee. Neither their alleged child, Mark Payne, nor the department was a party to that action. The instant paternity case in the juvenile division, however, was expressly filed on behalf of appellee Mark Payne and the department against appellant Mark Cartee. Mark Payne's mother, Janet Waters, is not a party to this action.

Based on the fact that appellees Mark Payne and the department were not parties to the general division case, we can easily determine that an identity of parties does not exist between the original bastardy action and the appellees' current paternity action.

■ The next question then becomes whether there is an identity of persons in privity with parties. Based on the authority cited above, this court also finds that the parties to the current paternity action are not in privity with the party prosecuting the original bastardy action. With regard to Mark Payne, courts have consistently held that privity does not arise merely from the relationship between parent and child. *Johnson, Park, Lindsay, Rees, Stephens, Carpenter,* and *Birkey.* Likewise, it is apparent that a human services department has a right to seek reimbursement for maternity expenses from a father that is separate and distinct from a mother's claim for such relief. *Brightwell v. Easter* (1994), 93 Ohio App.3d 425, 427–428, 638 N.E.2d 1067, 1068–1070; *State ex rel. Morgan Cty. Dept. of Human Serv. v. Roddy* (1991), 63 Ohio App.3d 575, 579 N.E.2d 538; R.C. 3111.13(C), 3111.15(A) and 5107.04(C).

Finally, due to the fact that appellees Mark Payne and the department are not in privity with Janet Waters, we find that an identity of persons in privity to

parties does not exist between the original bastardy action and the appellees' current paternity action.

For the foregoing reasons, we believe the juvenile court did not err by failing to apply the doctrine of *res judicata* to either appellee so as to bar the instant paternity action. Accordingly, appellant's second assignment of error is therefore overruled.

## III

"The trial court erred to the prejudice of the appellant and abused its discretion by failing to apply the doctrine of equitable estoppel to appellees' * * * paternity action since appellant relied on [the mother's] representations made in the 1984 compromise agreement to his detriment."

The abuse-of-discretion standard applies when an appellate court reviews a trial court's decision regarding the application of the doctrine of equitable estoppel. *Dycus v. Dycus* (May 13, 1988), Lucas App. No. L–87–216, unreported, 1988 WL 47372. That is, we cannot disturb the judgment of the trial court unless the record reveals that the court's decision was unreasonable, arbitrary or unconscionable. *Id.*, quoting *Blakemore, supra,* 5 Ohio St.3d at 219, 5 OBR at 482, 450 N.E.2d at 1142.

In this assignment of error, appellant contends that the trial court erred by failing to apply the doctrine of equitable estoppel in order to deny appellees' recovery in this action. According to appellant, the court's error has caused him to suffer prejudice because he had actually relied upon appellee Mark Payne's mother's misleading representation of facts concerning the 1984 compromise agreement.

This court has previously recognized that the doctrine of estoppel applies only where one party relies upon the actions or representations of another party. *Lannigan v. Pioneer S. & L. Co.* (May 25, 1990), Washington App. No. 89 CA 7, unreported, 1990 WL 71932. Furthermore, the court in *First Fed. S. & L. Assn. v. Perry's Landing, Inc.* (1983), 11 Ohio App.3d 135, 11 OBR 215, 463 N.E.2d 636, surveyed the policies underlying the doctrine of estoppel and deduced four essential elements. First, there must be a representation of words or acts. Second, the representation must communicate a fact or state of affairs in a misleading way. Third, the representation must induce actual reliance by the other party and the reliance must be reasonable and in good faith. And, fourth, the other party would suffer prejudice if the representing party were not estopped from contradicting the earlier representation. *Id.* at 145, 11 OBR at 226–227, 463 N.E.2d at 647–648.

After a consideration of the parties involved in the instant litigation, however, we find that the doctrine of equitable estoppel does not apply to this case. The doctrine does not apply with regard to Mark Payne because, as discussed above with respect to the second assignment of error, he was not a party or in privity with a party to the original general division bastardy action. The Supreme Court of Ohio has held that there is a "general requisite of an identity of persons and parties, or their privies, within the prior proceeding in order for the judgment or decree to operate as an estoppel, strangers to such a judgment or decree will not be affected thereby." *Goodson v. McDonough Power Equip., Inc.* (1983), 2 Ohio St.3d 193, 196, 2 OBR 732, 735, 443 N.E.2d 978, 982. Thus, appellant may not raise the doctrine of equitable estoppel against appellee Mark Payne.

The same holds true with regard to the department. Like Mark Payne, the department was not a party or in privity with a party to the original action. Therefore, appellant may not raise this doctrine against the department either.

For the foregoing reasons, the juvenile court did not abuse its discretion by failing to apply the doctrine of equitable estoppel to either appellee so as to bar the instant paternity action. Accordingly, appellant's third assignment of error is therefore overruled.

## IV

"The trial court erred to the prejudice of the appellant and abused its discretion by failing to apply the doctrine of laches to appellees' * * * paternity action since appellant was materially prejudiced by the lapse in time between the two actions."

The abuse-of-discretion standard applies when an appellate court reviews a trial court's decision regarding the application of the doctrine of laches. *Davis v. Davis* (Sept. 12, 1995), Morrow App. No. CA–817, unreported, 1995 WL 615734. In order to find such an abuse, we must examine whether the decision of the trial court was unreasonable, arbitrary or unconscionable and not merely an error of judgment. *Id.*

In this assignment of error, appellant argues that the trial court erred by not applying the equitable doctrine of laches to this paternity action, since he had justifiably relied on the 1984 compromise agreement. Specifically, appellant claims that he has dramatically changed his obligations in life by getting married, having a daughter and incurring financial debts related to his new family.

The Supreme Court of Ohio has recognized that the doctrine of laches is applicable to parentage actions filed prior to the expiration of the statute of limitations, but only if the defendant can show that he has suffered material prejudice. *Wright v. Oliver* (1988), 35 Ohio St.3d 10, 517 N.E.2d 883, syllabus.

In that case, a mother and child filed a paternity action four years after the mother had dismissed a bastardy action. The father claimed that the delay had materially prejudiced him because he incurred substantial obligations that he would not have otherwise undertaken. The Supreme Court held that the father was not materially prejudiced because his interim expenditures and family obligations were not relevant on the question of whether he was the child's biological father. *Id.* at 12, 517 N.E.2d at 885–886.

In *Park v. Ambrose* (1993), 85 Ohio App.3d 179, 619 N.E.2d 469, this court refused to bar a child's claim for support by the doctrine of laches. Although we barred the mother's claim for support on such grounds, we reasoned that a mother's laches should not be imputed to the child so as to bar a child's recovery of support. *Id.* at 185, 619 N.E.2d at 473–474. See, also, *Washington v. Dickey* (Sept. 9, 1985), Scioto App. No. 1554, unreported, 1985 WL 11152, in which this court rejected a claim of laches where an alleged father was married with two small children because there was no evidence that the father had incurred these new family obligations in reliance on the mother's failure to file a paternity action.

Likewise, during the trial of this matter, appellant testified on direct examination that he had married, fathered a daughter and incurred financial obligations subsequent to the execution of the 1984 compromise agreement. On cross-examination, though, appellant conceded that he would have married his wife regardless of whether he owed child support for his son. The trial court in this matter found no material prejudice, and we discern none based on the evidence contained in the record either. Therefore, appellant cannot prevail on a laches defense against either appellee.

Furthermore, with regard to the department, this court has previously held that laches cannot generally be imputed to the state or other governmental units. *Wright v. Ohio Dept. of Human Serv.* (Mar. 26, 1993), Washington App. No. 92 CA 15, unreported, 1993 WL 97791. We also conceded in *Wright,* though, that some narrowly tailored exceptions to this general rule may exist. In the case *sub judice,* however, appellant has failed to raise any exceptions that would apply under the particular circumstances of this case. Thus, appellant cannot prevail on the doctrine of laches against the department.

For the foregoing reasons, the juvenile court did not abuse its discretion by failing to apply the doctrine of laches to either appellee so as to bar the instant paternity action. Accordingly, appellant's fourth assignment of error is therefore overruled.

## V

"The trial court erred to the prejudice of the appellant and abused its discretion by allowing appellee [*sic*] to proceed as 'next friend' of Mark Payne in her second paternity action."

The abuse-of-discretion standard applies here also. In this assignment of error, appellant contends that the trial court erred by allowing appellee's mother to prosecute the instant action as appellee's "next friend." Specifically, appellant argues that appellee's mother should have sought an appointment as appellee's guardian *ad litem* and posted an appropriate bond.

In support of his argument, appellant correctly points out that in *Johnson v. Norman, supra,* 66 Ohio St.2d at 191, 20 O.O.3d at 199, 421 N.E.2d at 127, the Supreme Court of Ohio stated that "the trial court should not allow the mother of the child to prosecute the child's separate action unless she is appointed guardian of the estate of the child, with appropriate bond, in order to ensure her vigorous pursuit of the child's action."

Unfortunately for appellant, the instant facts are materially different from the facts underlying *Johnson.* In *Johnson,* the mother had previously instituted a paternity action in her own name on October 7, 1974. Eight days later, she dismissed that action with prejudice. Two and a half years later on April 12, 1977, the mother then filed a new paternity action on behalf of herself as well as in her capacity as next friend of her son.

The Supreme Court prefaced its statement quoted above by commenting that it agreed with the appellate court on that issue. However, appellant has failed to note the reason for the court's agreement. According to the Supreme Court, the appellate court "feared, *based on Ms. Johnson's prior action,* that she might fail to vigorously pursue the child's action on his behalf." (Emphasis added.) *Id.,* 66 Ohio St.2d at 187, 20 O.O.3d at 197, 421 N.E.2d at 125.

In this case, the facts fail to substantiate any such fear. Waters prosecuted the original bastardy action for over two years before eventually signing the compromise agreement. With respect to that agreement, it is important to note that she received from appellant $12,000 on behalf of her son. In addition, Waters instituted the present paternity action solely in her son's name in her capacity as his "mother and next friend" and not on behalf of herself. Finally, as additional protection for the child's interest in this case, a guardian *ad litem* was appointed three days after the juvenile division referee determined that appellant was the child's father.

For the foregoing reasons, the juvenile court did not abuse its discretion by permitting Mark Payne's mother to proceed as his "next friend" in this paternity action. Accordingly, appellant's fifth assignment of error is therefore overruled.

## VI

"The trial court erred to the prejudice of the appellant and abused its discretion by overruling appellant's motion for a new trial, in derogation of Ohio Civil Procedure Rule 59."

The abuse-of-discretion standard applies when an appellate court reviews a lower court's denial of a motion for a new trial. *Risner v. Risner* (Dec. 28, 1995), Jackson App. No. 94CA757, unreported, 1995 WL 767360; *Thompson v. Hayslip* (1991), 74 Ohio App.3d 829, 836, 600 N.E.2d 756, 761; *Jenkins v. Krieger* (1981), 67 Ohio St.2d 314, 320, 21 O.O.3d 198, 201–202, 423 N.E.2d 856, 860–861; *Rohde v. Farmer* (1970), 23 Ohio St.2d 82, 52 O.O.2d 376, 262 N.E.2d 685, paragraph one of the syllabus. In the context of a lower court's decision in making an entry, the term "abuse of discretion" refers to an unreasonable, arbitrary or unconscionable attitude by the court in making its ruling. *Thompson, supra.*

In this assignment of error, appellant contends that the trial court abused its discretion by denying his motion for a new trial based on newly discovered evidence. As discussed in more detail above, appellant reopened the original general division action after appellees had initiated the instant case. The general division vacated its prior dismissal entry, appointed a guardian *ad litem* for Mark Payne and, in 1995, approved the compromise agreement executed by appellant and Mark Payne's mother in 1984. Appellant subsequently filed a motion for a new trial, arguing that the 1995 judgment entry approving the 1984 compromise agreement constituted newly discovered evidence supporting his affirmative defense of *res judicata.*

Civ.R. 59(A)(8) provides that a new trial may be granted to a party on all or part of the issues on the grounds of "newly discovered evidence, material for the party applying, which with reasonable diligence he could not have discovered and produced at trial." In addition to these statutory requirements, the Supreme Court has also developed a six-part test for courts considering such a motion. *Sheen v. Kubiac* (1936), 131 Ohio St. 52, 5 O.O. 365, 1 N.E.2d 943. In order for a trial court to grant a new trial based on newly discovered evidence, the moving party must show that (1) the new evidence must be such as will probably change the result if a new trial is granted, (2) it must have been discovered since the trial, (3) it must be such as could not, in the exercise of due diligence, have been discovered before the trial, (4) it must be material to the issues, (5) it must not be merely cumulative to former evidence, and (6) it must not merely impeach or contradict former evidence. *Id.*, paragraph three of the syllabus.

The trial court relied upon *Schwenk v. Schwenk* (1982), 2 Ohio App.3d 250, 2 OBR 272, 441 N.E.2d 631, to overrule appellant's motion for a new trial. According to the court, appellant was not entitled to a new trial because the events constituting his "newly discovered evidence" occurred after the juvenile division trial. That is, the general division did not enter its judgment approving the compromise agreement until after the juvenile division had completed its paternity trial.

 R.C. 2501.02 grants appellate jurisdiction to this court to review, affirm, modify, set aside or reverse lower court judgments that are based on the lower court's commission of prejudicial errors. Therefore, when a trial court states an erroneous basis for its judgment, we must nevertheless affirm the judgment if it is legally correct on other grounds (*i.e.,* it achieves the right result for the wrong reason) because such an error was not prejudicial. *Jackson v. Ohio Bur. of Workers' Comp.* (1994), 98 Ohio App.3d 579, 585, 649 N.E.2d 30, 34; *Newcomb v. Dredge* (1957), 105 Ohio App. 417, 424, 6 O.O.2d 178, 181–182, 152 N.E.2d 801, 806–807. See, also, Whiteside, Ohio Appellate Practice (1996) 88, Section 7.03.

 We believe appellant's motion for a new trial should have been overruled on the ground that his newly discovered evidence would probably not change the result if a new trial were granted. This is based on our disposition of appellant's second assignment of error above, holding that the defense of *res judicata* was not legally available to him. Therefore, any consideration by the trial court of the general division's recent judgment entry allegedly in support of the *res judicata* defense could not have resulted in a different decision.

For the foregoing reasons, the juvenile court did not abuse its discretion by overruling appellant's motion for a new trial. Accordingly, appellant's sixth assignment of error is therefore overruled.

## VII

"The trial court erred to the prejudice of the appellant and abused its discretion by failing to defer to the general division's jurisdiction and by failing to uphold the general division's order approving the 1984 compromise agreement."

 In this assignment of error, appellant argues that the juvenile division erred when it accepted jurisdiction over the instant paternity action. According to appellant, appellees should have filed this action in the general division based on its alleged continuing jurisdiction arising from the original bastardy action. For the reasons that follow, we disagree.

It is well-established law in Ohio that a court having general jurisdiction of the subject matter of an action possesses the authority to determine its own jurisdiction on the issue presented. *State ex rel. Butler Cty. Bd. of Commrs. v. Butler Cty. Court of Common Pleas* (1978), 54 Ohio St.2d 354, 356, 8 O.O.3d 359, 360, 376 N.E.2d 1343, 1344–1345, quoting *State ex rel. Miller v. Lake Cty. Court of Common Pleas* (1949), 151 Ohio St. 397, 39 O.O. 232, 86 N.E.2d 464, paragraph three of the syllabus. That is, such a court has jurisdiction to proceed in the matter absent a patent and unambiguous restriction on the jurisdiction of the court that clearly places the issue outside its jurisdiction. *Id.*

R.C. 2151.23(B)(2) and 3111.06(A) expressly provide that juvenile courts have original, but not exclusive, jurisdiction to determine the paternity of any child alleged to have been born out of wedlock. As an initial matter then, the juvenile division in this case clearly had general jurisdiction over the subject matter of the paternity action, thus authorizing it to determine its own jurisdiction to decide that issue.

■ Furthermore, the Supreme Court of Ohio recognizes that, as between courts of concurrent jurisdiction, the court whose power is first invoked through the initiation of proper proceedings acquires jurisdiction, to the exclusion of all other courts, to adjudicate the whole issue and to settle the rights of the parties. *Knowlton Co. v. Knowlton* (1992), 63 Ohio St.3d 677, 680–681, 590 N.E.2d 1219, 1220–1222, quoting *State ex rel. Phillips v. Polcar* (1977), 50 Ohio St.2d 279, 4 O.O.3d 445, 364 N.E.2d 33, syllabus. Thus, once a court properly exercises jurisdiction, no other court may exercise conflicting jurisdiction until the initial court has exhausted its jurisdiction. *Brooks v. Brooks* (Nov. 1, 1988), Franklin App. No. 87AP–980, unreported, 1988 WL 118814. A court does not exhaust its jurisdiction until it decrees a final judgment that disposes of all issues before the court. *Id.*

■ For purposes of resolving this assignment of error only, the court will assume without deciding that the general division in this case possessed concurrent jurisdiction with the juvenile division to decide the paternity issue. As detailed above, the original bastardy action was properly transferred to the general division of the common pleas court. When the general division action was dismissed with prejudice on February 27, 1984, the general division's jurisdiction was effectively exhausted. The instant paternity action was properly initiated in the juvenile division on March 25, 1993. Although appellant later filed a motion to reopen the original bastardy action, the general division did not approve the parties' 1984 compromise agreement until January 31, 1995, over twenty-two months after the juvenile division action was initiated.

Finally, the main case relied upon by appellant in support of this assignment of error is distinguishable from the case *sub judice* in several material respects. In *LaBonte v. LaBonte* (1988), 61 Ohio App.3d 209, 572 N.E.2d 704, a wife filed a divorce complaint in the general division of a common pleas court. The court granted the divorce and ordered the husband to pay child support although it did not expressly establish a parent-child relationship. Less than three weeks later, the husband filed an action in the juvenile division for a judgment "disestablishing" the existence of any father-child relationship. The juvenile division subsequently granted the wife's motion to dismiss the husband's complaint while the general division granted the husband's motion for relief from judgment.

On appeal, this court reversed the juvenile division's judgment dismissing the husband's parentage complaint and affirmed the general division's judgment granting the husband's motion for relief from judgment. In support of our decision, we cited R.C. 3111.06(A) in its entirety. The first part of the statute established the jurisdiction of the juvenile courts. The final sentence of this subsection, however, stated:

" 'If an action for divorce, dissolution, or alimony has been filed in a court of common pleas, that court of common pleas has original jurisdiction to determine if the parent and child relationship exists between one or both of the parties and any child alleged or presumed to be the child of one or both of the parties.' " *Id.*, 61 Ohio App.3d at 221, 572 N.E.2d at 712, fn. 1.

We then determined that both divisions could decide the paternity issue since a divorce action had been filed in the general division.[3] Furthermore, we also stated that under the circumstances, "it might be preferable for the general division herein to decide such issue in that it is more familiar with the parties and had made the child support order herein." *Id.*

The case *sub judice* fails to satisfy any of the practical considerations present in *LaBonte*. First, the original general division case in this instance was a bastardy action, not a divorce, dissolution or legal separation proceeding.[4] This case thus fails to even fall within the limited statutory exception.

Second, the elapsed time in this case between the termination of the general division case and the commencement of the juvenile division case was almost nine years as opposed to three weeks. This fact minimizes the general division's familiarity with the parties and issues involved.

Third, the general division in *LaBonte* was even more familiar with the case because the court had just participated in a hearing in which the parties stated the terms of their settlement agreement on the record which the court then relied upon to make disposition of the case. Conversely, although counsel in this case orally informed the court in 1984 as to the terms of the settlement discussions,

---

3. See, also, *Gatt v. Gedeon* (1984), 20 Ohio App.3d 285, 288–289, 20 OBR 376, 379–381, 485 N.E.2d 1059, 1062–1063, holding that since final judgment had already been rendered by a domestic relations court in a divorce proceeding prior to the husband filing his R.C. 3111.06 action in the juvenile court, the domestic relations court did not have the necessary jurisdiction to hear the paternity action because the divorce proceeding was no longer pending. Thus, the court determined that under such circumstances, the statute instructs the parent to file the paternity action in the juvenile court.

4. The current version of R.C. 3111.06(A), effective January 1, 1991, provides, "If an action for divorce, dissolution, or legal separation has been filed in a court of common pleas," as opposed to the former version of the statute discussed in *LaBonte, supra,* providing, "If an action for divorce, dissolution, or alimony has been filed in a court of common pleas * * *."

the parties' compromise agreement was not approved by the court until 1995. Also, the court did not rely upon the terms of the parties' settlement to dispose of the case in 1984. The general division's familiarity with this case is further weakened by these facts.

Finally, it is important to note that our decision in *LaBonte* did not divest jurisdiction of either of the common pleas' divisions to determine the paternity issue. That is, the decision permitted concurrent paternity actions in both the general and juvenile divisions. Therefore, due to these factual differences, our decision in *LaBonte* directly contradicts appellant's position with regard to this assignment of error.

For the foregoing reasons, the juvenile court did not err or abuse its discretion by exercising jurisdiction over the instant paternity action. Accordingly, appellant's seventh assignment of error is overruled.

Having overruled all of appellant's assignments of error, we affirm the judgment of the juvenile court.

*Judgment affirmed.*

PETER B. ABELE, P.J., and KLINE, J., concur.

HARSHA, J., dissents.

PETER B. ABELE, Presiding Judge, concurring.

I concur in both the judgment and the opinion. I write separately to emphasize that the failure to submit the 1984 compromise agreement between appellant and Janet Waters to the common pleas court for approval and filing has no bearing on the outcome of this case. For the many reasons set forth in the principal opinion, the existence of this compromise agreement does not prevent the minor child or the state of Ohio from pursuing a separate claim for support. See, generally, *Ransome v. Lampman* (1995), 103 Ohio App.3d 8, 658 N.E.2d 313; *Lewis v. Chapin* (1994), 93 Ohio App.3d 695, 639 N.E.2d 848; *Park v. Ambrose* (1993), 85 Ohio App.3d 179, 619 N.E.2d 469; *Rees v. Heimberger* (1989), 60 Ohio App.3d 45, 573 N.E.2d 189; *Johnson v. Norman* (1981), 66 Ohio St.2d 186, 20 O.O.3d 196, 421 N.E.2d 124; *Viera v. Woolum* (Aug. 6, 1987), Franklin App. No. 86AP–867, unreported, 1987 WL 15311.

HARSHA, Judge, dissenting.

I respectfully dissent and would reverse the trial court's judgment based upon the appellant's seventh assignment of error. I believe the juvenile division abused its discretion in exercising jurisdiction over the paternity issues while the

same issues were technically pending before the general division. See *Knowlton Co. v. Knowlton* (1992), 63 Ohio St.3d 677, 590 N.E.2d 1219.

While the dismissal entry from the 1984 Ross County Court of Common Pleas General Division case is not in the record, a copy of the settlement agreement is. The juvenile division referee specifically found that the parties in the prior case had consented to a voluntary dismissal with prejudice upon the general division's approval of the agreement. The referee also found, and the settlement agreement specifically states, that it is not effective until approved by the general division.

Accordingly, neither the settlement agreement *nor* the dismissal was effective. Because the dismissal was implicitly conditioned upon approval of the settlement agreement, the General Division maintained ongoing jurisdiction over the bastardy/paternity action. I would reverse the judgment of the trial court on this basis alone without reaching the other assignments of error.