DECISION AND JUDGEMENT ENTRY
This is an appeal from a judgment of the Ross County Court of Common Pleas, denying appellants' adverse possession claim to portions of the boundary line between the lots owned by the parties. Appellants and appellees are neighbors on Caldwell Street in Chillicothe.
Appellants timely filed their appeal to this September 14, 1998 decision, bringing before us two assignments of error for review:
 I. THE TRIAL COURT ERRED IN FINDING THAT PLAINTIFFS FAILED TO GIVE NOTICE FOR A PERIOD OF TWENTY-ONE YEARS.
 II. THE TRIAL COURT ERRED BY PLACING A BURDEN ON PLAINTIFF TO ESTABLISH LACK OF PERMISSION TO UTILIZE PROPERTY.
The errors assigned are related, and we will address them together. The appellants bought the house and lot located at 255 Caldwell Street, Chillicothe, in 1963. This is the postal address of the real estate as are the references to No. 249 and No. 255, hereinafter stated. No. 255 and adjoining No. 249, now owned by the appellees, are single-family, two-story houses built on the east side of Caldwell Street, near the intersection with Seventh Street in the City of Chillicothe, Ohio. The land slopes downhill away from Caldwell Street to an alley running parallel with Caldwell Street. Each lot is forty feet wide and approximately one hundred eighty-one feet deep. From Caldwell Street, facing east toward the properties, No. 249, the appellees' house, would be on the left, and No. 255, the appellants' house, would be on the right, with Caldwell Street being the western boundary of both parcels of real estate, Nos. 249 and 255.
Approximately twelve feet separate the two houses. A sidewalk runs from the street along the south (right) side of 249 Caldwell, between the two houses, and ends near the back of the house. When the appellants purchased the property in 1963, a wire fence supported by locust poles ran from the back of the two houses to the alley, separating the back yards of the two properties. At the eastern end of the lot for No. 255, there is a garage partially built into the hillside, which opens on to the alley. This garage is on the southeast corner of appellants' lot. Beside the garage is a walkway and stairs built along the northern side of the garage, eventually leading up to another walkway, which terminates at the back door of No. 255. Between this walkway and the back lot of No. 249, is a concrete retaining wall, a sloping, grassy area, and, originally, another concrete retaining wall on the boundary with the back of the appellees' lot.
Testimony at trial indicated the grassy area was originally used for access to the back of No. 255 for coal deliveries. From photographs submitted at trial by the appellants, it appears just wide enough for a modern full-size pickup truck. Until the appellees purchased No. 249 in 1994, the back of that lot had never been improved and ended in trees, brush, and a small parking area adjacent to the alley. It appears that dirt from the back of No. 249 partially buried the north retaining wall.
Shortly after purchasing No. 255 in 1963, the appellants installed a chain link fence inside of, that is, to the right or south of the old wire fence, when viewed facing eastward from Caldwell Street. This fence began at a gate at the northeast back corner of the appellants' house. The chain link fence then extended to the east toward the alley and the lower end of the retaining wall, where it terminated in a gate facing the alley. The fence then continued up alongside the other retaining wall to encircle the back of the garage and the rest of the back yard of No. 255.
Honeysuckle vines covered the old wire fence, which the appellants folded over the new chain link fence. Appellants removed the wire fence from the locust posts in 1971 but left these posts in the ground. Appellants testified that they trimmed the honeysuckle for a number of years and planted flowers on both sides of the fence.
At the front of the two lots, between the sidewalk to the back of No. 249 and the front walk to No. 255, was a large tree. The appellants trimmed this tree on occasion and planted ivy in the area between the two walkways because the area was too shady to support grass. Further back, in the area between the two houses, appellants testified that in 1978, and for several years thereafter, they placed extra dirt and bricks to fill in a slight depression located in this area. Apparently, water from the melting of heavy snows in 1978 flooded appellants' basement. The fill and the re-routing of a drainpipe from No. 249 cured this problem.
At the time appellants purchased No. 255 in 1963, the Wisecups owned No. 249. This elderly couple died in 1987-1988, and the property remained vacant for three years. In 1991, John Manring purchased No. 249 and constructed a board fence from the back edge of his house to the point where the appellants' chain link fence began.
The appellees purchased No. 249 in 1994. They installed a six-foot high privacy fence encircling two-thirds of the back yard of No. 249 to provide a fenced-in area for their dog. This new wooden fence began at the back of No. 249, ran parallel to the chain link fence to the front corner of a shed in the back yard, thence around the remainder of the yard. In the process of constructing the new fence, the appellees removed the locust fence posts.
In July 1997, the appellees began to demolish the northern retaining wall, the incident that brought this dispute to a head and culminated in this lawsuit. The appellees eventually installed a new retaining wall, paved the area adjacent to the alley for parking, and landscaped the bank at the back of their lot.
As soon as the appellees began demolition of the retaining wall, appellants filed a complaint to quiet title and for trespass, claiming removal of the retaining wall would damage their property. Appellees counter-claimed with their own quiet title action.
Appellants claimed adverse possession of four separate parts of the boundary between No. 255 and 249. From the front of Nos. 249 and 255 toward the back, the four areas are:
 1. A strip approximately two feet wide between the sidewalk to the back of No. 249 and the appellants' lot line (the area covered by ivy);
 2. An area between the two houses now occupied by the privacy fence, where the sidewalk ends near the back of No. 249;
 3. The area between the present line of the chain link fence and the old wire fence line (a strip about a foot to six inches wide extending from the back of the houses to the alley); and
4. The northern retaining wall at the back of the two lots.
At trial, the appellees submitted as one of their exhibits a survey prepared by a registered surveyor employed by S.A. England Associates. That survey found the actual property line between Nos. 249 and 255, began at the right of way on Caldwell Street, then ran parallel to, but two feet south of, the southern edge of the sidewalk to No. 249. The line continued from the back of the appellees' house, along the board fence, to the chain link fence. A portion of this board fence, built by the appellees, was on the property of the appellants. However, the lower portions of the chain link fence and the retaining wall were on the property of the appellees, according to this survey. The extent of the encroachments appeared to be no more than six inches either way.
Accordingly, the trial court dismissed the claim of the appellants for trespass and damages. Finding a genuine dispute as to the title of the land, the trial court established a new boundary line between Nos. 249 and 255 Caldwell Street. It determined that the line should be the survey line of S.A. England and Associates from the right of way along Caldwell Street to the board fence. From there, the line would follow the line of the board fence and chain link fence to the end of the chain link fence. At that point, the line would jog six inches to the south then return to the east, ending at the right of way of the alley, thereby rendering the existing monuments of the respective parties as the common property line separating these parcels of real estate.
 Opinion
The party asserting title by adverse possession bears the burden of proving such possession. Thompson v. Hayslip (1991),74 Ohio App.3d 829, 832, 600 N.E.2d 756, 758. Because the law generally disfavors the transfer of property by adverse possession, claims based on adverse possession are to be strictly construed in favor of the person who has title to the property. See Montieth v. Twin Falls United Methodist Church, Inc. (1980),68 Ohio App.2d 219, 224, 428 N.E.2d 870, 875.
The trial court sagaciously noted in its opinion that the Supreme Court of Ohio changed the standard of proof in adverse possession actions by the 1998 decision of Grace v. Koch (1998),81 Ohio St.3d 577, 692 N.E.2d 1009. The Supreme Court of Ohio held that:
 To acquire by adverse possession, a party must prove, by clear and convincing evidence, exclusive possession and open, notorious, continuous, and adverse use for a period of twenty-one years. Grace v. Koch, syllabus
We agree with the trial court that the appellants have failed in their burden to establish adverse possession. We are mindful, as well, that judgments supported by some competent, credible evidence should not be reversed by a reviewing court as being against the manifest weight of the evidence. C.E. Morris Co. v.Foley Constr. Co. (1978), 54 Ohio St.2d 279, 376 N.E.2d 578.
Appellant argues that the trial court improperly assigned to them the burden of establishing that the property owners of 249 Caldwell had notice of their use of the land. Appellants argue further, in their Second Assignment of Error, that the trial court also improperly assigned the burden to them to establish the use of their neighbor's property was without permission.
Adverse possession occurs when a trespasser makes open, notorious, continuous, exclusive and adverse use of another's land. Failure of proof as to any of the elements results in failure to acquire title by adverse possession. See PennsylvaniaRd. Co. v. Donovan (1924), 111 Ohio St. 341, 349-350,145 N.E. 479, 482.
Appellants claim they established their claim to the two-foot strip in the front yard by planting and maintaining the bed of ivy and trimming the tree. Appellants testified to their upkeep over thirty-five years of first the honeysuckle, later sweet pea vines on the fence row, and the planting of flowers on both sides of this fence. Appellants claim adverse title to the side lot between the houses by their act of filling in a depression, after 1978, to prevent flooding. Finally, they insist they have maintained the retaining wall on the northeast corner of their lot since purchase and installed their chain link fence on top of this wall.
The Supreme Court of Ohio noted that it is the visible and adverse possession with the intent to possess that constitutes the adverse nature of the possession. Grace, supra, quoting fromHumphries v. Huffman (1878), 33 Ohio St. 395, 402. In order to establish adversity, "the tenant must unfurl his flag on the land, and keep it flying so that the owner may see, if he will, that an enemy has invaded his dominions and planted his standard of conquest". Id., quoting Darling v. Ennis (1980), 138 Vt. 311,313, 415 A.2d 228, 230.
A bed of ivy is not a flag of conquest. We hold that the appellants had the burden of proving by clear and convincing evidence that their claimed adverse possession of the land was with notice to the adjoining landowners and without the permission of those landowners. The planting of flowers and trimming of bushes does not establish a use of the land that is adverse to the titled owner.
The trial court found the filling of the area between the houses occurred less than twenty-one years before the filing of the complaint. Therefore, as to this claimed parcel, the appellants failed to prove this essential element of an adverse possession claim. Even if it had occurred earlier, the testimony and photographs would establish that this activity was with the permission of, and for the mutual benefit of, both landowners. One part of these improvements included the installation of an extension onto the drainpipe at No. 249 to divert water away from both the houses, thereby benefiting both.
There was no evidence to support the claim of adverse possession to the north retaining wall by the appellants. As the trial court noted, if the fence straddled this wall, the postholes for the chain link fence would have had to be drilled into the concrete. From the photographs submitted by the appellees, it appears more likely, as the trial court concluded, that the fence ran beside this wall. The appellants failed to submit any evidence supporting their claim of having maintained this wall.
The trial court had the benefit of a two-day trial and the testimony of several witnesses. Over eighty exhibits were submitted, mostly photographs, showing the property from 1962 to 1998. Our review of the exhibits and the trial transcript reveals nothing that would cause us to question the decision of the trial court. The S.A. England survey does establish that the two fences do not follow the property line precisely. Hence, the decision of the trial court to quiet title, by establishing the fence line as the boundary between the two properties, is eminently reasonable in view of all the facts submitted at trial.
Accordingly, we OVERRULE both of the appellants' assignments of error, and AFFIRM the judgment of the trial court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that the appellees recover of the appellants costs herein taxed.
The court finds that there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Ross County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, P.J.: Concurs in Judgment and Opinion.
Harsha, J.: Dissents.
For the Court
 By: _______________________ DAVID T. EVANS, JUDGE.
 NOTICE TO COUNSEL Pursuant to Local Rule No. 14, this document constitutes afinal judgment entry and the time period for further appealcommences from the date of filing with the clerk.