OPINION
Plaintiff-appellant Patrick S. McConachie appeals from the September 11, 1998, Judgment of the Richland County Court of Common Pleas. Defendants-appellees are David and Geraldine Meeks.
 STATEMENT OF THE FACTS AND CASE
Appellant Patrick S. McConachie is the fee simple owner of an undivided two-fifths (2/5) interest of a 2.27 acre parcel of land located on Rinehart Road in Bellville, which is located in Richland County. Appellant had acquired a one-fifth interest in the subject property in 1994 from the estate of his father, Richard K. McConachie. Appellant later purchased his brother's one-fifth interest. Pursuant to a warranty deed, Mary Etta Clinker had conveyed the property now owned in part by appellant to Marion D. Charles and Wanda Charles in 1947. In 1955, the Charles' conveyed the same property to Charles R. Bowser, Jr. and Blanche L. Bowser pursuant to a warranty deed. The Bowsers later conveyed the same property to Wendell D. Downer and Ruby M. Downer, who, in 1972, conveyed the same to Richard K. McConachie, appellant's father. Pursuant to a "Certificate for Transfer of Real Estate" recorded in 1974, the Estate of Richard K. McConachie conveyed the property to appellant and his four siblings. Appellant's property abuts and adjoins that owned by appellees, who are the fee simple owners of a 3.149 acre parcel of real estate located at 175 Mill Road in Richland County. Harry N. Ritter is the predecessor in title to the real estate currently owned by appellees. While appellee Geraldine Meeks is Ritter's daughter, appellee David Meeks is Ritter's son-in-law. On December 31, 1997, appellant filed an action to quiet title against appellees to determine the boundary line between appellant's and appellees' property. Appellant, in his complaint, alleged that appellees "claim or may claim ownership of a certain parcel of [appellant's] real estate by virtue of a recent survey of said real estate." Appellant also set forth a claim for adverse possession. Appellees filed an answer on January 15, 1998. A bench trial before Judge James DeWeese was held on July 24, 1998. At issue was whether appellant is the owner of an approximately one-third acre triangular shaped parcel of land that is bound on one side by the boundary line of appellant's and appellees' property, on another side by Rinehart Road, and on the final side by the remains of an old wire fence. While appellant asserts that he owns the triangle of land, appellees maintain that the fence is not the true boundary and that the triangle of land is part of their property. A survey (Exhibit 6) done by Roger Stevens places the disputed triangle of land within the 3.149 acre parcel of land owned by appellee. At trial, appellant testified that he believed that an old woven fence that was mostly knocked down marked the western property line between his and appellant's property. According to appellant, "the fence row as it travels from Rhinehart Road up to [a] concrete post . . . "delineates the property line. Transcript of Proceedings at 25. Appellant, however, had not maintained the fence over the years. Appellant also testified that in 1973 his father installed a lane through the triangular parcel of land. When asked what the lane was used for, appellant testified that "we go in and we cut wood. We clean up the area every once in awhile." Transcript of Proceedings at 18. Appellant further testified that since 1973, he has used the lane 10 or 20 times a year and that "the only thing we've ever done there is wood that's fell over, the dead wood, we've pulled out, used it for fire wood." Transcript of Proceedings at 24. Appellant also stated that he takes quiet walks through the woods in the disputed triangle probably ten times a year. When asked, appellant responded that he had never seen evidence that anyone else used the disputed triangle. Harry Ritter, the predecessor in title to the land currently owned by appellees, also testified at trial. When asked whether he was aware that the fence was on his property line, Ritter stated that he "[n]ever really gave it a big thought. I assumed maybe part of it was." Transcript of Proceedings at 51. According to Ritter, the fence row mentioned by appellant did not go all the way to Rhinehart Road, but rather ended a couple a hundred feet from the road. Ritter, who testified that he was aware that a lane and culvert had been put through the disputed triangle of land by appellant or his father over ten years ago, testified that he never had reason to question the boundary line between his property and appellant's property until a survey was done in 1996. Had he been aware of the dispute as to the ownership of the triangular parcel of land, he would have discussed it with appellant. When asked whether he was aware that appellant and his brother used the lane on occasion, Ritter testified as follows: "Never seen him. Every once in a while you would hear a saw running, but you can hear for quite a distance. But nothing other than that." Transcript of Proceedings at 53. Ritter also stated that he "could tell it [the lane] had been traveled some." Transcript of Proceedings at 59. Although both Ritter and appellee David Meeks went mushroom hunting on the disputed triangle of land, Ritter never saw appellant or his family on the land and did not observe any other use of the disputed land. Moreover, although big piles of dirt were observed dumped on the disputed triangle of land, neither of the parties in the case sub judice admitted to having dumped the same. At the conclusion of appellant's case, which consisted of both Ritter's and appellant's testimony, the trial court granted appellees' motion to dismiss appellant's case and rendered a verdict for appellees. A Judgment Entry was filed on July 30, 1998. On August 10, 1998, appellant filed a Request for Separate Findings of Fact and Conclusions of Law. Thereafter, both parties filed proposed findings of fact and conclusions of law. On September 11, 1998, the trial court's Finding of Fact and Conclusions of Law were filed. It is from the July 30, 1998, Judgment Entry and the September 11, 1998, Finding of Fact and Conclusions of Law that appellant prosecutes this appeal, raising the following assignments of error:
 I THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DIRECTING THE VERDICT FOR DEFENDANT-APPELLEE AND DISMISSING PLAINTIFF-APPELLANT'S COMPLAINT ON THE GROUND THAT UPON THE FACTS AND THE LAW THE PLAINTIFF-APPELLANT HAS SHOWN NO RIGHT TO ACQUIRE TITLE THROUGH ADVERSE POSSESSION.
 II THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT HELD THAT THE PLAINTIFF-APPELLANT FAILED TO PROVE THE BOUNDARY LINE AND TITLE BY MUTUAL ACQUIESCENCE.
 III THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT DISMISSED THE PLAINTIFF-APPELLANT'S COMPLAINT, AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, AFTER THE EXPIRATION OF MORE THAN TWENTY-ONE YEARS, IN CONTRAVENTION OF THE STATUTE OF LIMITATIONS SET FORTH IN OHIO REVISED CODE SEC. 2305.04.
 IV THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT HELD THAT THE PLAINTIFF-APPELLANT FAILED TO PROVE BY A PREPONDERANCE OF THE EVIDENCE THAT THE DEED DESCRIPTION INCLUDED THE DISPUTED TRIANGLE OF LAND, WHICH WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, AND IMPROPER AS A MATTER OF LAW.
While appellant, without leave of court to do so, has exceeded the thirty (30) page limit for briefs set forth in Local App. R. 9(B), the court shall address the merits of appellant's arguments. We are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v Jeffries (Feb. 10, 1982), Stark App. No. CA-5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction (1978), 54 Ohio St.2d 279. I Appellant, in his first assignment of error, maintains that the trial court erred in holding that appellant failed to establish his right to acquire title by adverse possession in the disputed triangle of land. To acquire title by adverse possession, a party must prove, by clear and convincing evidence, exclusive possession and open, notorious, continuous, and adverse use for a period of twenty-one years. Grace v. Koch (1998), 81 Ohio St.3d 577. It "is the visible and adverse possession with an intent to possess that constitutes [the occupancy's] adverse character." Humphries v. Huffman (1878),33 Ohio St. 395, 402. In addition, the occupancy "must be such as to give notice to the real owner of the extent of the adverse claim." Id. at 404. We agree that appellant has failed to establish by clear and convincing evidence that his use of the disputed triangle of land was to the exclusion of all others. At trial, Harry Ritter, appellees' predecessor in title, testified that both he and his son-in-law, appellee David Meeks, used the disputed triangle of land for mushroom hunting. Moreover, appellant's use of the disputed parcel was not exclusive since an unknown party also dumped large piles of dirt on the land. Nor was appellant's use of the disputed triangle of land open and notorious. While it is not necessary that the true owner of the land have actual knowledge of the adverse use, the "open and notorious `requirement' will be deemed to have been satisfied if the use is visible or of common knowledge to the general public." Davis v. Konjicija (1993) 86 Ohio App.3d 352. There is no evidence in the record, however, that the general public knew of appellant's use of the disputed land. Nor was such use plainly visible to appellees as is evidenced by the fact that Ritter had never seen appellant or his family on the land. At best, appellant's use of the land was intermittent as is evidenced by the fact that appellant testified that he used the lane through the triangle of property ten to twenty times a year to access his own property, that, when the mood struck him, he took quiet walks on the same and that he gathered fallen wood. Not only had Ritter never seen appellant or his family on the land, but he testified as follows when asked whether he observed any evidence that the property was being used in any manner: "A. Not much, no Q. Did you observe a lane on the property? A. It's not much of a mark at all. Q. But you have observed it; have you not? A. I could tell it had been traveled some, yes. Q. So that lane has been used. but other than the lane, had you observed any other use on that property? A. No. Q. Now you indicated that you heard a saw in the past. Did you ever find evidence that anybody had cut any trees on that particular disputed triangle of land? A. No, I haven't. There's no stumps. Like I said, it could have been downed limbs, but I've never seen him when he was doing it. Q. You saw no sawdust? A. I really hadn't observed, no. Q. Or scrap ends of wood? A. No. Q. Or brush or brush pile? A. No, it's fairly clean." Transcript of proceedings at 59-60.
In short, appellant's intermittent occupancy was not such as to give appellee's notice of the extent of the adverse claim. Humphries v. Huffman (1887), 33 Ohio St. 395, 404. In addition, because of its intermittent nature, appellant's use of the land was not continuous. Furthermore, we find that appellant's use of the disputed property was not adverse. For possession to be adverse, "there must have been an intention on the part of the person in possession to claim title, so manifested by his declarations or his acts, that a failure of the owner to prosecute within the time limited, raises a presumption of an extinguishment or a surrender of his claim." Lane v. Kennedy (1861), 13 Ohio St. 42,47. As is noted above, appellant used the lane 10 to 20 times a year to access his own property, took walks on the property when the notion struck, and at times cleared wood off of the property. Such acts, limited as they are, do not clearly manifest appellant's intention to claim title to the disputed property. Based on the foregoing, we find that the trial court did not err in finding that appellant failed to establish a valid claim of adverse possession since such decision was not against the manifest weight of the evidence. There was competent, credible evidence establishing that appellant's use of the disputed triangle of land was not exclusive, continuous, open or notorious, or adverse. Appellant's first assignment of error is overruled.
 II
In his second assignment of error, appellant contends that the trial court erred when it held that appellant failed to prove the boundary line and title to the disputed property by mutual acquiescence. The doctrine of acquiescence is applied in cases where adjoining landowners occupy their respective properties up to a certain line and mutually recognize such line as a boundary line separating their properties. Ballard v. Tibboles (Nov. 8, 1991), Ottawa App. No. 91-0T-013, unreported. "Generally, two conditions must be present in order for the doctrine of acquiescence to apply: first, the adjoining landowners must mutually respect and treat a specific line as the boundary to their property, and second, that line must be treated as such for a period of years, usually the statutory time period required for adverse possession." Id. at 11-12. See also Bobo v. Richmond (1874), 25 Ohio St. 115, 118 and Engle v. Beatty (1931)41 Ohio App. 477, 483. In the case sub judice, the trial court held that appellant failed to prove appellees acquiesced in recognizing the remains of the old wire fence as the boundary line between their respective parcel. We find that the trial court did not err in its holding since there was competent, credible evidence supporting the trial court's finding. As the trial court correctly noted in its July 30, 1998, Judgment Entry, there is no proof that the parties in this matter ever mutually agreed that the wire fence, which was broken down and on the ground, established the boundary line between their respective parcels of property. Nor is there evidence of any mutual intent between the parties to establish the fence as the property line since there were no discussions between appellant and appellees regarding the location of the boundary line between the two properties. Appellant's second assignment of error is overruled.
 III
Appellant, in his third assignment of error, contends that the trial court erred in dismissing his complaint "when the twenty-one year statute of limitations set forth in R.C. 2305.04 had expired prior to the filing of the complaint to quiet title; when the Plaintiff-appellant had proven all the elements of adverse possession, and where the facts of the case demonstrated acquiescence to the fence being the property line." R.C. 2305.04
states, in relevant part, that "[a]n action to recover the title to or possession of real property shall be brought within twenty-one years after the cause of action accrued, . . .". Appellant cites to such statute for the proposition that appellees are now estopped from asserting title since the twenty one years had expired prior to appellant's filing his complaint in the case sub judice. However, as is discussed above, appellant has failed to prove all of the elements of adverse possession or that there was a mutual acquiescence as to the boundary line. Appellant's third assignment of error is overruled.
 IV
Appellant, in his fourth and final assignment of error, claims that the trial court erred in holding that appellant "did not prove his deed description included the disputed triangle." At trial, appellant pointed to the legal description contained in the deed from Clinker to Marion and Wanda Charles as evidence that the disputed triangle of land was contained within the deed to appellant's parcel. While no surveyor was called to testify at trial, appellant himself testified that based on the legal description contained in the deed from Clinker to the Charles', which was appellant's Exhibit 5, he stepped off and measured his property. Specifically, at trial, appellant testified as follows: BY MR. HITCHMAN:
 Q. Shawn, [appellant] I am going to ask you to refer to Plaintiff's Exhibit 5, and explain for the court from the description contained in Plaintiff's Exhibit 5 as to your knowledge where the boundary line is according to that description . . .
 A. According to this deed, the line comes up to the center to the bridge on the center of Hines Avenue. Then it goes 300 feet east to a point in the right-of-way of the B O Railroad. Then it goes north 246 degrees — or 246 feet, I believe, to a point in Rhinehart Road. Then it goes southwest 165 feet to the east corporation line of the Village of Bellville.
 Q. And that's what's written there in Plaintiff's Exhibit 5?
A. Yes, it is.
 Q. Okay. Have you personally measured the distance between the center of Hines Avenue and Rinehart Road to the end of the fence that's in dispute here?
A. Yes, I have.
 Q. How many feet is it that you stepped off personally?
A. Roughly 165 feet.
 Q. And that's from the center of Hines Avenue and Rhinehart Road to the end of the fence which comes down to Rhinehart Road?
A. Yes.
 Q. Shawn, have you also stepped off or measured the fence on the west side of your property line there located on Rhinehart Road as to the distance of that fence and the direction?
A. Yes.
 Q. Could you tell the court what you've done in terms of stepping that off and measuring that?
 A. My brother and I took a tape measure and measured from the center of Rhinehart Road up the fence line to the big tree where it makes a turn; and we also measured from there up to the concrete monument on the hill.
Q. And how many feet did you obtain when you did that?
A. I'll have to look at my book. The blue one.
Q. I take it you made notes of that when you did it?
 A. Yes, I did. From the center of the road to the big tree where it turns, we measured 223 feet.
Q. Okay.
 A. From the tree to the concrete monument up on the hill we measured 376 feet.
 Q. And, Shawn, the tree that you're referring to where it turns, is that the tree that was pointed out to the judge when the court made a field view of this area?
A. Yes, it is.
 Q. Okay. And I guess for clarity of the record, the fence that you're describing, that was the fence also pointed out to the judge on the day the court made the field investigation?
A. Yes, it is." Transcript of Proceedings at 12 — 16.
The trial court, in rejecting appellant's claim that his deed description included the disputed triangle, held that there was no competent, credible evidence supporting such claim. We agree. As the trial court noted in its July 30, 1998, Judgment Entry, the legal description contained in the deed from Clinker to the Charles' is extremely complex "and the disputed land is not proven to be described therein." We find that the trial court's decision was not against the manifest weight of the evidence since appellant was not competent to testify as to the analysis and interpretation of Exhibit 5 and the surveying descriptions contained therein. Nor was there corroborating evidence to substantiate appellant's interpretation. In addition, the Exhibits 1, 2, 3, and 4 are records of the property transfers after Exhibit 5. None of the Exhibits 1 — 4 describe the triangle of land. The statements of the trial court at the conclusion of the evidence sums up his analysis: "In terms of the quiet title, I gather no one can contend that Plaintiff's Exhibits 1, 2, 3, or 4 describe the disputed triangle. Rather, that claim goes back to Plaintiff's Exhibit 5, a deed in the chain of title to Plaintiff's current — Plaintiff's Exhibit 1, the Plaintiff's Exhibit 5. There are a couple of reasons why I'm not persuaded that it does describe a title to the disputed triangle. The first is that its' a deed for 199 acres of land. It may very well, in fact, and clearly does encompass a larger title in the Clinkers than was conveyed away and what ultimately became plaintiffs piece of property, which is limited to 2.27 acres. Therefore, it very well could encompass areas that were not conveyed. That's the first problem with it. The second is basically the argument made by Mr. Chisnell that it's not at all clear in this 30-line description of which — each line of which contains several measurements or angles or a designation of state highways and county highways by various numbers which are of no meaning to me that we've selected the right distance from 165 feet from the intersection of Hines and Rhinehart Avenue to this point along Rhinehart. Secondly, it also does say that wherever the boundary line of the village starts, the east boundary line of the village corporation line, that you are to proceed north 1,118 feet. There is no triangle described or no dogleg in that boundary line as described as is contended for by the plaintiffs. So the deed description of quiet title action, I find there has been a failure of proof." (Transcript of Proceedings, pages 78 and 79)
We find the analysis of trial court was supported by competent, credible evidence. Appellant's fourth assignment of error is overruled.
The Judgment of the Richland County Court of Common Pleas is affirmed.
Edwards, J. Wise, P.J. and Gwin, J. concur.