DEMMITT ET AL., APPELLEES, *v.*
MCMILLAN ET AL., APPELLANTS.

(No. 1852—Decided April 9, 1984.)

Messrs. *Lagos, Lagos & Baader* and Mr. *James H. Lagos,* for appellees.
*Schlafman & Fodal Co., L.P.A.,* and Mr. *Joe R. Fodal,* for appellants.

BROGAN, P.J. This appeal arises from a judgment of the Clark County Common Pleas Court in favor of the plaintiffs, Billie L. and Anita E. Demmitt, declaring them as sole owners of certain real property described in their complaint. The court further granted injunctive relief in the plaintiffs' favor restraining the defendants, Charles and Valerie McMillan, from coming onto and causing damage to the disputed property. The plaintiffs and defendants are adjoining owners of two plots of land in Clark County, Ohio. The McMillans acquired their property by deed from the executor of Ray L. McClellan's estate on or about May 18, 1981. The Demmitts acquired their parcel of land by purchase from Karl Schaffner on or about July 1, 1975. Schaffner acquired the property *via* his parents shortly after his father, Roy Schaffner, passed away in 1967.

The disputed parcel is dimensionally rectangular in shape and is situated between the parties' respective properties. It runs twenty-five feet along the south side at New Carlisle-Springfield Pike (east-west), 411.32 feet (north-south) along the boundary between the adjoining properties, and 54.3 feet along the north side (east-west), which property consists of somewhere between one-fourth and one-third of an acre.

The record reveals that the two properties were at one time owned by Roy Schaffner, father of both Kenneth and Karl Schaffner. The senior Schaffner deeded the west property to his son Kenneth sometime around 1935-1936. This property is presently owned by Charles and Valerie McMillan. Roy Schaffner retained ownership of the adjoining tract until his death in 1967. This tract of land descended to Karl Schaffner who later sold it to Billie and Anita Demmitt.

Kenneth Schaffner resided on the tract of land conveyed to him by his father with his wife, Ruth, until his death sometime around 1946. Ruth Schaffner then became owner of the west tract of land and continued to reside next to her in-laws, Roy and Nellie Schaffner. In the late 1940's Ruth married one Howard Craig. After the marriage she conveyed a one-half interest in the property to Howard. The Craigs resided on the property until 1957. They then leased the premises until it was sold in 1963.

On the eastern portion of what was once the Craigs' property there is a swale or ditch. In 1950 Howard Craig decided to put up a fence on their land in order to keep his sheep from going down into the ditch. He stated in a stipulated deposition that he asked Roy Schaffner if it would be all right to do so. Craig then dug the fence posts and Schaffner either stretched the barbed wire fence, or at least assisted Craig in doing so. This fence stretched along the edge of the ditch nearly the entire length north and south of the adjoining lands. The fence was placed to the west of the actual boundary line leaving approximately one-third of an acre of the Craig's property to the east unenclosed. It is this property which is the subject matter of the present dispute. Craig testified that when he put up the fence he was fully aware that his property extended beyond the fence line. He stated that he measured his actual boundary at that time.

The record reveals testimony to the effect that in the late 1930's or early 1940's Schaffner planted walnut trees on the disputed property. He also used this land prior to 1950 for the grazing of his hogs. After the fence went up in 1950 Schaffner continued to use the disputed parcel for growing and harvesting alfalfa and hay. He also continued to graze his hogs in this area. In 1959 the Schaffners rebuilt their house and installed a leach field that extended the tile basin into the disputed land. Roy Schaffner continued using this land until his death in 1967. Craig stated he made no use of this land since 1950 other than to occasionally mow the weeds and thistles along the fence line.

In 1963 the Craigs sold their property including the disputed portion to Ray and Helen McClellan. Roy Schaffner continued to use the disputed property up to the fence line. The McClellans never made an objection to this use even though their deed apparently indicated that they in fact owned the land beyond the fence. After acquiring title to the adjoining property in 1967-1968, Karl Schaffner continued to use the disputed land. He testified he performed some rock work in the ditch area in 1969 to prevent erosion.

In 1972 Karl Schaffner sold his property to Billie and Anita Demmitt. At the time they purchased the land they believed they owned up to the fence line and continued using this property as

their own until 1981. At that time the McClellans conveyed their interest in the adjoining tract to Charles and Valerie McMillan. The McMillans originally thought that they were only acquiring the land up to the fence, but soon after acquiring title had a survey conducted that revealed their property extended beyond that.

The McMillans then attempted to remove the fence and claim ownership of the land. This action prompted the Demmitts to bring the present legal proceeding. They argued that they had acquired title to the disputed property by adverse possession. They therefore requested the trial court to declare them sole owners of the disputed strip of land. In addition they sought injunctive relief to prevent the defendants from coming onto and causing damage to the disputed parcel of land.

The trial court found in favor of the plaintiffs. In its judgment entry the court concluded the following:

"The Court finds that the Plaintiffs have established by a preponderance of the evidence that their possession to the property in dispute was actual, open, notorious, hostile, under claim of right, continuous and exclusive since June of 1950. The Court further finds that the Plaintiffs have established adverse possession for a period in excess of twenty-one (21) consecutive years. The Court finds that this adverse possession was over property that extended up to a fence line which was established in June, 1950."

The entry went on to state that:

"The Court hereby issues a declaratory judgment that the Plaintiffs are the owners of the above-property and further issues an injunction restraining the Defendants, Charles McMillan and Valerie McMillan from coming onto said property. The Court costs in this case are assessed to the Defendants."

From this judgment the defendants-appellants have timely appealed to this court setting forth a single assignment of error. The McMillans maintain that:

"The trial court erred in ruling that the plaintiffs-appellees had established their claim of adverse possession by a preponderance of the evidence."

In order to prevail on a claim for adverse possession in Ohio the claimant must establish that his possession of the land was open, notorious, exclusive, adverse, hostile, and continuous for more than twenty-one years. See *Clark* v. *Potter* (1876), 32 Ohio St. 49; *Fulton* v. *Rapp* (App. 1950), 59 Ohio Law Abs. 105 [45 O.O. 494]. See, also, R.C. 2305.04 (establishes twenty-one year statutory period). Although the Supreme Court has not addressed the issue it would appear this state has adopted the view that such elements must be established by a mere preponderance of the evidence. See *McInnish* v. *Sibit* (1953), 114 Ohio App. 490 [19 O.O.2d 476]; *Rosenblum* v. *Wilkes* (App. 1928), 6 Ohio Law Abs. 323.

Appellants essentially challenge the trial court's judgment as being contrary to the weight of the evidence. The Ohio Supreme Court has stated that a reviewing court will not reverse a judgment as being against the manifest weight of the evidence when it is supported by some competent, credible evidence going to all the essential elements of the case. *C. E. Morris Co.* v. *Foley Construction Co.* (1978), 54 Ohio St. 2d 279 [8 O.O.3d 261]. A review of the record clearly reveals adequate evidence under this standard to support the conclusion that the appellees' possession, as well as that of their predecessors in interest, was open, notorious, exclusive and continuous since 1950 as the court found. Similarly, despite allegations by the appellants that the appellees' possession was permissive, there is some competent evidence to support the court's finding that possession was held both adverse and hostile to the rights of record titleholders.

Appellants argue stronger evidence of adverse possession should be required in this particular case in light of the family relationship existing between Ruth Craig and Roy and Nellie Schaffner. As family members are more likely to allow one another to make such use of each other's property that they might not otherwise allow of non-family members, the existence of this relationship ought to be considered as a factor favoring an inference that such use was permissive. As such we would agree that the existence of such a relationship should therefore require of the adverse claimant stronger evidence of adverse possession. See 2 Ohio Jurisprudence 3d (1977) 549, Adverse Possession, Section 47.

In discussing the essential elements of obtaining title by adverse possession it has been stated that:

"The unfolding of the bud of possession into the flower of title comes so close to the concept of a forfeiture obtained by equity that the law has developed certain elements essential to such perfection of title. Generally speaking, since there are no equities in favor of a person seeking to acquire property of another by adverse holding, his acts are to be strictly construed." 5 Thompson, Commentaries On The Modern Law of Real Property (1979) 604, Section 2543.

This principle is even more pronounced where there exists a relationship between the parties that weighs in favor of a finding that the original entry and use of the property was done with permission. In such a case we believe it would be appropriate to impose upon the adverse claimant the burden of proving his claim by clear and convincing evidence. See, generally, *D'Ferro* v. *American Oil Co.* (C.A. 5, 1953), 206 F. 2d 648; *Georgia Pacific Corp.* v. *Blalock*

(Miss. 1980), 389 So. 2d 498; *Lynch* v. *Lynch* (1960), 236 S.C. 612, 115 S.E. 2d 301; *Staggs* v. *Story* (1952), 220 Ark. 823, 250 S.W. 2d 125.

In the present matter, however, the family relationship as in-laws terminated prior to 1950 by the death of Ruth's first husband, Kenneth Schaffner, and her subsequent remarriage to Howard Craig. Consequently, at the time the fence was put up in 1950 no relationship giving rise to the heightened burden of proof was in existence. The trial court therefore applied the appropriate standard of proving adverse possession by a preponderance of the evidence. As the issue of permissiveness was a question of fact we may not substitute our judgment where it is supported by some competent evidence.

The record reveals that Howard Craig rather than Roy Schaffner sought permission to abandon the swale and erect a fence so that he could make better use of his own property. Thereafter, the Schaffners used the strip exclusively, and for a variety of purposes, some of which would have alerted the most trustful friend that the Schaffners were openly, notoriously, and adversely claiming the parcel as their own. The same conduct continued by the Schaffners' predecessors in interest to the land, including their son Karl, and the plaintiffs herein, Billie and Anita Demmitt.

Having concluded the trial court's judgment was supported by the evidence we must overrule appellants' sole assignment of error.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

WEBER, J., concurs.

KERNS, J., concurs in the judgment.