**DAVIS et al., Appellees,**

v.

**KONJICIJA et al., Appellants.**

[Cite as *Davis v. Konjicija* (1993), 86 Ohio App.3d 352.]

Court of Appeals of Ohio,
Lake County.

No. 92–L–008.

Decided Feb. 16, 1993.

*Dale F. Brown,* for appellees.

*Anthony J. Aveni,* for appellants.

CHRISTLEY, Presiding Judge.

This is an appeal from a judgment of the Lake County Court of Common Pleas, finding in favor of appellees, Betty and Dayton E. Davis, on their complaint to quiet title in certain real property. Appellants, Marjia and Miroslav M. Konjicija, seek the reversal of the trial court's order requiring the Lake County Auditor to transfer title in .211 acres of land from them to appellees.

Appellees presently reside on Glen Drive in Eastlake, Ohio. Appellees purchased their home and the accompanying land in August 1960, and have continuously lived in this residence since that date. Soon after moving into their new home, appellees began to remove some of the trees and brush from the rear of their property for the purpose of enlarging their backyard. In doing so, appellees went beyond the rear boundary of their property and also removed the trees and brush from the rear part of the adjacent tract of land.

Appellees continued the process of clearing the rear portion of the adjacent tract for approximately two to three years. Then, in 1964, appellees placed a substantial amount of soil upon the cleared portion of the adjacent tract, hereinafter referred to in this opinion as the "disputed property." The addition

and grading of this soil raised the ground level of the disputed property approximately eight to ten inches. In the ensuing years, appellees added several additional loads of topsoil and then planted grass over the entire area.

In addition to keeping the disputed property cleared and mowed over the next twenty-five years, appellees used the area for various activities. For example, at various times during the period, appellees maintained a cabin and a swingset upon the disputed property for their children. The children also used the area for activities such as neighborhood ballgames. Besides these recreational uses, the area was also sporadically employed as a place for family outings. Appellees further used the disputed property as a place for maintaining various family pets.

The adjacent tract in question is approximately three acres in size, and is located on Stevens Boulevard in Eastlake. Although it has been divided into six sublots, the tract has been vacant during the entire period in which appellees have lived on Glen Drive. The tract is heavily wooded, especially the portion which abuts the rear of appellees' property. As a result of the denseness of these woods, it is extremely difficult for someone standing near the rear of the appellants' tract to see any part of appellees' property. However, due to general slope of the land, and depending on the season, it is possible for someone standing toward the front of appellants' tract to see appellees' home and the front part of their property. In addition, a small stream runs through the rear of this adjacent tract.

As of 1960, the adjacent tract was owned by Anna Hocevar. In 1967, Hocevar died testate. Pursuant to the will, the tract was bequeathed to Emma Logar and Logar's three daughters. Then, in June 1988, the entire six-sublot tract was purchased by appellants.

Prior to 1988, none of the previous owners of the adjacent property challenged appellees' use of the disputed area. However, immediately after appellants had bought the adjacent property, they hired a surveyor to determine the boundaries of their land. Based upon the surveyor's calculations, appellants posted "No Trespassing" signs on the disputed property. Appellees immediately removed these signs, and continued to use the property as they had previously. Appellees then initiated the instant action.

In their complaint to quiet title, appellees alleged that they were entitled to the disputed property under the doctrine of adverse possession. In answering, appellants asserted that they held title to the disputed property in fee simple, and that appellees' possession of the area had not been open and notorious for the required period of twenty-one years. Appellants also asserted a counterclaim against appellees, seeking to recover damages sustained as a result of the alleged illegal trespass upon the disputed property. This counterclaim was subsequently withdrawn by appellants at trial.

Prior to trial, appellants also asserted a third-party complaint against the parties who had sold them the adjacent property. Named as third-party defendants were Logar, Logar's husband, Logar's three daughters, and the husbands of two of the daughters.[1] In this complaint, appellants alleged that if appellees acquired the disputed property by adverse possession, appellants were entitled to have the purchase agreement rescinded.

After considerable delay, a two-day bench trial was held in March 1991. During the course of this proceeding, the parties to the third-party complaint stipulated that the issues raised in that claim would be submitted to the trial court on briefs, depending upon the decision on appellees' adverse possession claim. Thus, no evidence was presented on the third-party claim.

At trial and in response to appellees' evidence concerning their use of the disputed property, appellants presented testimony establishing that the prior owners had never been aware of appellees' possession of the area, and that appellees' use of the area could not be seen from the remainder of the adjacent property, unless the person was standing in the woods beside the disputed area. Appellants also presented testimony indicating that appellees had enlarged the area of the disputed property *after* appellants had asserted their claim to the property.

In finding in favor of appellees, the trial court concluded that the construction and maintenance of a yard on the disputed property was sufficient to satisfy the requirement that their possession of the land be open and notorious. The court further held that appellees' claim was not defeated by the fact that the area could not be seen from the remainder of appellants' property.

In its judgment entry, the trial court did not rule upon the third-party complaint. However, the court did find that there was no just reason for delay, pursuant to Civ.R. 54(B). Thus, this appeal is properly before this court at this time.

In contesting the judgment in favor of appellees, appellants have assigned the following as error:

"The trial court erred in ruling that plaintiffs-appellees met all requisites to acquire ownership by adverse possession.

"The trial court erred in ruling that plaintiffs-appellees had adversely occupied the entire claimed area for more than twenty-one years."

---

1. As an aside, it should be noted that the third-party defendants also filed a notice of appeal from the judgment of the trial court. This separate appeal, Lake App. No. 92–L–009, was dismissed by this court for failure to prosecute.

Under their first assignment, appellants contend that the trial court's finding of adverse possession was erroneous because the evidence did not support the conclusion that appellees' possession of the disputed area was open and notorious. Essentially, appellants argue that, as a matter of law, a finding of open and notorious use is not warranted when the evidence unequivocally establishes (1) that the prior owners of the adjacent property were unaware of appellees' use, and (2) that appellees' use was not readily visible from the remainder of the adjacent property.

■ The elements of a claim of adverse possession are well settled under Ohio law. To gain title under this doctrine, a party must establish that "his possession was open, notorious, exclusive, adverse, hostile and continuous for more than twenty-one years." *Demmitt v. McMillan* (1984), 16 Ohio App.3d 138, 16 OBR 146, 474 N.E.2d 1212, paragraph one of the syllabus. Typically, the claimant's burden is to establish these elements only by a preponderance of the evidence. *Id.*

■ In determining whether appellees met this burden in this case, this court would first note that appellants do not dispute that appellees' possession of the disputed area was adverse to the rights of the titled owner. That is, they do not dispute that the nature of appellees' use was sufficient to give notice that they intended to take possession of the area.[2] Instead, they contend that appellees' use was not open and notorious. This contention is based primarily upon the fact that the disputed area was secluded from the remainder of the adjacent property, and accordingly could not readily be seen from the remainder of the property.

The requirement of open and notorious has not been the subject of substantial consideration in prior adverse possession cases. Generally, this requirement will be deemed to have been satisfied if the use is visible or of common knowledge to the general public. 2 Ohio Jurisprudence 3d (1977) 521–522, Adverse Possession, Section 23. Consistent with this proposition, the Supreme Court has held that the use of pipes underneath the surface of the property does not constitute open and notorious possession. *Elster v. Springfield* (1892), 49 Ohio St. 82, 30 N.E. 274.

In relation to this point, it has been held that a claim for adverse possession will still lie *even when the title owner did not have actual knowledge* of the

---

2. As to this point, this court would note that the conclusion that appellees' use was adverse is consistent with the case law in this district. In *Dreslinski v. Bugary* (Mar. 20, 1992), Ashtabula App. No. 91–A–1639, unreported, 1992 WL 190162, we held that a claim will be considered adverse if the use of the property is the same as what the actual owner would do, *i.e.,* occasional use can be adverse if that is what is appropriate for the location of the land. Under this standard, appellees' grading, maintenance and use of the disputed area as a backyard was sufficient to satisfy this element of the claim.

adverse use. "The owner is charged with knowledge of adverse use when one enters into open and notorious possession of the land under a claim of right." *Vanasdal v. Brinker* (1985), 27 Ohio App.3d 298, 299, 27 OBR 343, 344, 500 N.E.2d 876, 878.

In this case, four witnesses on behalf of appellants testified that when they were on the adjacent property, they were unable to see appellees' use of the disputed property. However, it is evident from their testimony that their inability to see the use was predicated upon the fact that their vision was blocked by the woods near the end of the property. Moreover, the testimony shows that these witnesses never walked the entire property, *i.e.*, these witnesses never went to the rear of the adjacent property.

Appellants' argument as to this point was also weakened by the testimony of a fifth witness who otherwise testified on their behalf. This witness specifically testified that when he walked into the woods at the end of the adjacent property, he *was* able to see the area that appellees had cleared.

Further evidence presented by appellees clearly demonstrated that while the disputed area was not visible from some vantage points, it was from others. Thus, their possession was open and notorious. In its opinion, the trial court correctly observed:

"The Davis encroachment was not covert or furtive. It was not intermittent. Anyone traversing within one hundred feet of the northern boundary line would have clearly observed [their] claim. It was visible to [their] neighbors on Glen Drive, many of whom likewise staked out their own clearings. The law imposes a duty on all landowners to make at least a cursory inspection of the entire property at least once in twenty-one years to defeat an invader's claim."

In addition, we would again note that the entire adjacent tract was only three acres in size. The encroachment itself was .211 acres, a significant portion of the whole. Thus, this is not an instance where the amount of acreage was such as to make a four-corner inspection impossible. If the prior owners had known the boundaries of their property and then had properly inspected it, they would have seen appellees' adverse use.

As the evidence supported the trial court's conclusion that appellees' use was open and notorious, it did not err in finding adverse possession. Appellants' first assignment is without merit.

■ Under their second assignment, appellants contend that the trial court erred in awarding appellees the entire disputed area. Appellants maintain that the evidence did not support the conclusion that appellees had possessed the entire area for all of the required twenty-one years.

In support of this argument, appellants cite the testimony of one of their own witnesses. This witness stated that he observed the disputed area on three separate occasions: (1) in July 1984; (2) immediately after appellants had bought their property in 1988; and (3) immediately before the trial in March 1991. The witness stated that when he first saw the area, it was only fifty to sixty feet deep. He further stated that by 1988, the area's depth had been increased by twenty feet. Finally, he stated that from 1988 to 1991, the area's depth had been increased to one hundred twelve feet.

Notwithstanding this testimony, the record before this court contains some evidence supporting the conclusion that the disputed area had always been approximately one hundred ten feet deep. Although not specifically addressing the issue, appellee, Dayton Davis, testified during cross-examination that when he initially cleared the disputed area, he used the brush he had cleared to create a rear boundary line for the area. Dayton further testified that this boundary line was created at the edge of the creek. This description of the area is consistent with its present dimensions.

Moreover, a second witness for appellees testified that sometime in 1964, appellees had hired him to spread the eight inches of soil on the disputed area. This witness also stated that the area he had worked on extended back to the edge of the creek. Again, this description of the disputed area is consistent with its present dimensions. Although this witness did give conflicting testimony as to the exact number of feet that the area extended back, he consistently stated throughout his testimony that the area went back to the edge of the creek.

The fact that appellees may have continued to clear within the brush barrier does not change the original establishment of that line.

As the record contains some competent, credible evidence supporting the conclusion that the depth is the same since 1964, the court's judgment as to the size of the disputed property was not against the manifest weight of the evidence. Thus, the court did not err in awarding the entire area to appellees. Appellants' second assignment is likewise without merit.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

JOSEPH E. MAHONEY and NADER, JJ., concur.