OPINION
This case arises out of a dispute over use of a driveway between Plaintiff-Appellants Ralph and Brenda Beener ("Beeners"), Defendant-Appellees and Cross-Appellants Richard and Jane Becraft ("Becrafts"), and Defendant-Appellees Thomas and Mary Ann Spahr ("Spahrs"). A gravel driveway, approximately ten feet wide used by all parties exists within the boundaries of the Beener property. The three properties involved form somewhat of a triangle, with the Becraft and Beener properties sitting side by side facing St. Paris Pike, and the Spahrs located to the rear of these properties. The driveway lies on the Beener property, approximately ten feet from the Becraft property line. It originates at St. Paris Pike and extends back to the Spahr property.
The land now occupied by the Beeners, the Becrafts, and the Spahrs was once known as the Edwards farm, and only contained the house now owned by the Spahrs. In the 1950's, the Edwards divided the farm so that members of the family could build homes on separate tracts. As a result, two homes were built by a sister and brother of the Edwards family facing St. Paris Pike. Marjorie Smith owned the property now owned by the Beeners, and George and Genevieve Edwards owned the property now owned by the Becrafts.
In 1976, Marjorie Smith granted an easement to George and Genevieve Edwards for ingress and egress from their property, purportedly on the driveway that was then and is now in existence. Two children of George and Genevieve Edwards testified at trial that the driveway suggested in this easement had been in existence as long as they could remember, which was the early 1950's, and had not changed. Moreover, they explained that the driveway has always been used by all individuals needing access to any part of the farm, particularly the three homes located on the property.
One of the witnesses, John Edwards, grew up in, and as an adult purchased what is now the Becraft property. He testified that he always thought that the driveway bordered the Becraft property, and as a result, the area just southwest of the driveway was always maintained by whoever owned the Becraft property. As a matter of fact, he did not discover the true location of the driveway until this lawsuit was filed. According to a survey completed after the Beeners and Becrafts had purchased their homes, there is actually about a ten-foot strip of grass that lies between the driveway and the Becraft property line. The legal description in the written easement granted in 1976 actually encompassed this grass strip and only a fragment of the driveway, instead of the gravel driveway in its entirety. Nevertheless, according to John and Kent Edwards, all of the individuals who lived or worked on the property had shared the driveway amicably without any problems.
When Mr. Beener purchased the property in 1997, everything changed. Once the Beeners realized that the Becrafts used the driveway for ingress and egress purposes, they approached the Becrafts and asked if they would lay their own driveway at the Beeners' expense. This never materialized apparently because a large tree sits at the edge of St. Paris Pike in the only location where the Becrafts could place a driveway. Additionally, the Beeners had a survey completed which revealed that the legal description for the written easement did not define the driveway, but instead the aforementioned strip of grass between the driveway and the Becraft property line.
Soon after the Beeners moved in, the Becrafts claim that they began blocking access to the driveway and harassing them. The Becrafts testified that Mr. Beener blocked the driveway at separate times with his car, his garbage cans, and a makeshift gate. Additionally, the Becrafts discussed incidents where Mr. Beener drove his car toward their eleven-year-old son while he mowed the lawn, quickly drove his car up the driveway while Mr. and Mrs. Becraft were walking, making them jump out of the way, and drove his car in their grass to pass Mrs. Becraft while she was driving on the driveway. The Becrafts further claimed that Mr. Beener constantly drove in their grass beside the driveway instead of on the driveway, causing damage to the grass and the trees.
On the other hand, the Beeners testified that Mr. Becraft harassed them by constantly taking pictures or videos of them while driving their cars. Moreover, Mrs. Beener testified to an incident where Mr. Becraft removed the crossbar to the "gate" they put up which blocked the driveway. Mrs. Beener alleged that when she asked Mr. Becraft to stop, he rapidly approached her in her yard, yelling about them blocking the driveway. Both parties deny these allegations against them.
Mrs. Becraft and her therapist testified about the effect of Mr. Beener's behavior on her mental health. In this regard, Mrs. Becraft explained that she has suffered from panic attacks and anxiety. The therapist testified that she was not aware whether Mrs. Becraft had any anxiety problems prior to these incidents with the neighbor, but did opine that Mr. Beener's behavior could either cause these symptoms or exacerbate any existing condition. However, she could not confirm that Mrs. Becraft's condition was caused by Mr. Beener's activities.
The Beeners filed this lawsuit initially against the Spahrs and other defendants who were later dismissed. In October of 1998, the Beeners amended their complaint to add Mr. and Mrs. Becraft as defendants. Soon after, the Becrafts requested a Ctemporary restraining order to prevent the Beeners from blocking the driveway, driving on their grass or harassing their family. On December 11, 1998, an agreed preliminary injunction was ordered, preventing the Beeners from engaging in any of the activity previously mentioned, and preventing the Becrafts from harassing the Beeners in any way.
Following a bench trial, the court concluded the following as is pertinent to this appeal:
 A prescriptive easement existed in favor of both the Becrafts and the Spahrs over the gravel driveway;
 None of the parties could interfere with the other parties' use of the driveway;
 Both Mrs. Becraft and Mrs. Beener's claims for intentional infliction of emotional distress were denied;
Becrafts' motion for contempt was denied;
 Becrafts' rights to the land referred to in the written easement was limited by the express terms thereof.
The Beeners have appealed this decision of the trial court raising the following assignments of error:
 The trial court erred in concluding that the Becrafts and Spahrs have an easement by prescription over the Beeners' property because the use of the Beeners' driveway by the Becrafts' and Spahrs' predecessors in title was not adverse to the interest of the Beeners' predecessors in title.
 The trial court erred in concluding that the Becrafts and Spahrs have an easement by prescription over the Beeners' property because any use of the Beeners' driveway by the Becrafts' or Spahrs' predecessors in title was with the permission of the Beeners' predecessors in title.
 The trial court erred in concluding that the Becrafts and Spahrs have an easement by prescription over the Beeners' property because that conclusion is inconsistent with the grant of a specific ten-foot wide easement for ingress and easement [sic] by a prior owner of the Beener property to prior owners of the Becraft property.
In response, the Becrafts cross-appealed raising the following four assignments of error:
 The trial court erred in denying the Becrafts' motion to amend their counterclaim to include a claim for reformation of the deed of easement based upon a mistake in the legal description.
 The trial court erred in failing to find that the Becrafts own by adverse possession the grass strip between the existing gravel driveway and their property line.
 The trial court erred in failing to find Plaintiff Ralph W. Beener in contempt for violating its temporary restraining order and agreed preliminary injunction.
 The trial court erred when it failed to award damages to Mrs. Becraft for Mr. Beener's intentional infliction of emotional distress.
Because several of the assignments of error from each party address similar issues, we will discuss the case by issue instead of by assignment.
The Becrafts' Use of the Driveway
The trial court found that both the Becrafts and the Spahrs had a prescriptive easement over the driveway and that none of the parties were to interfere with the other parties in its use. In their appeal, the Beeners take issue with this finding, alleging that the Becrafts' and the Spahrs' use of the driveway did not meet the elements of a prescriptive easement. On the other hand, although the Becrafts do not necessarily disagree with the trial court's finding of a prescriptive easement, they argue instead that the court erred in not allowing them to amend their counterclaim to include a request for reformation of the deed. We will address this issue first.
Civ.R. 15 provides that leave to amend pleadings shall be freely given by a trial court when justice so requires. The purpose for this liberality is to allow cases to be decided on their merits. Hall v. Bunn
(1984), 11 Ohio St.3d 118, 121. Nonetheless, a trial court has the discretion to decide whether to allow an amendment to the pleadings, and this decision will not be reversed absent an abuse of that discretion.Wilmington Steel Products, Inc. v. Cleveland Elec. Illum. Co. (1991),60 Ohio St.3d 120, 122. In the context of a motion to amend, a trial court abuses its discretion by denying a timely filed motion to amend "where it is possible that plaintiff may state a claim upon which relief may be granted and no reason otherwise justifying denial of the motion is disclosed." Peterson v. Teodosio (1973), 34 Ohio St.2d 161, paragraph six of the syllabus.
The trial court denied the Becrafts' motion to amend concluding that the Becrafts had failed to make a prima facie showing of mutual mistake of fact. In their proposed amended pleading, the Becrafts asserted:
 21. The Deed of Easement attached hereto as Exhibit 1, which is also described in Exhibit C to the Complaint, contains a legal description which does not conform to the location of the driveway then and now in existence and referred to in said Deed of Easement.
 22. Said variance between the Deed of Easement and the referenced driveway, shown on the survey commissioned by the plaintiffs and attached hereto as Exhibit 2, was caused by mutual mistake of the parties.
As indicated, they attached a copy of the deed of easement which states as follows: "The above described easement and right-of-way shall be for the purpose of ingress and egress from the within Grantees [sic] property, which lies south and west of the above described premises." Further, the deed provides: "The aforementioned driveway is presently being used in common by the Grantor and the Grantees and is presently in existence."
Initially, we note that pleadings are to be construed liberally in order to effect substantial justice. See Civ.R. 8(F); Crosby v. Beam
(1989), 47 Ohio St.3d 105, 110. After reviewing the Becrafts' proposed amended pleading, including the attached deed of easement, we find that they sufficiently set forth a prima facie case for reformation of the deed due to mutual mistake. The parties are not required to establish their entire case in the pleadings, only to provide a statement showing they are entitled to relief and a demand for judgment, both of which were included in the Becrafts' proposed amended pleading. Consequently, we find that the trial court abused its discretion by failing to allow the Becrafts to amend their counterclaim.
Moreover, a trial court may reform a written agreement, such as a deed, when it fails to reflect the intent of the parties as a result of a mutual mistake. Snyder v. Monroe Twp. Trustees (1996), 110 Ohio App.3d 443,452; Phoenix Concrete, Inc. v. Reserve-Creekway, Inc. (1995),100 Ohio App.3d 397, 405. Such a reformation can be requested not only by the original parties to the instrument, but also by those in privity with the original parties. Mason v. Swartz (1991), 76 Ohio App.3d 43, 49, citing Broadwell v. Phillips (1876), 30 Ohio St. 255, 259. However, in order to reform the deed, the mutual mistake must be proven by clear and convincing evidence. Id. at 50.
When reviewing the evidence in this case, we find the actual wording of the deed of easement to be compelling proof that a mutual mistake occurred. Although the legal description was later determined not to define the correct location of the driveway, all other indications in the easement suggest that it was intended to describe the gravel driveway already in existence. In addition, at trial, the Becrafts proffered the testimony of Marjorie Smith, the original grantor of the easement, as the trial court would not allow her to testify. Her testimony would have revealed the parties' intent that the easement encompass the gravel driveway that has always been used for ingress and egress, instead of the grass strip. Further, members of the Edwards family testified that they always thought that the Becraft property bordered the driveway, which could explain why the legal description in the deed began at the boundary line of that property, covering the grass strip instead of the driveway. Based on all of the evidence presented, we find that the Becrafts presented clear and convincing evidence of mutual mistake, justifying a reformation of the deed. Accordingly, we find that the trial court erred by failing to reform the deed to reflect the existing gravel driveway as the intended easement. We therefore reverse this finding and remand for the trial court to reform the deed of easement consistent with this opinion.
The Spahrs' Use of the Driveway
In contrast, a written easement was not granted to the Spahrs, who live behind the Becraft and Beener properties. In order for the Spahrs to claim a right-of-way over the driveway, they must establish the existence of either an easement by prescription or an implied easement. In this regard, the court below found that the Spahrs had established the elements of an easement by prescription. To make such a conclusion, the trial court must have found clear and convincing evidence that the Spahrs' and their predecessors' use of the driveway was open, notorious, adverse and continuous for twenty-one years. See Coleman v. Penndel Co.
(1997), 123 Ohio App.3d 125, 130, citing Demmitt v. McMillan (1984),16 Ohio App.3d 138, syllabus. Although testimony from Thomas Spahr and the Edwards established that use of the driveway by the occupant of the Spahr property was open, notorious and continuous for more than twenty-one years, we do not believe the element of adverse use was proven by clear and convincing evidence.
Adverse use is described as "us[ing] a way over the land of anotherwithout permission as a way incident to his own land, and continu[ing] to do so with the knowledge of the owner . . ." McCune v. Brandon (1993),85 Ohio App.3d 697, 701, citing Pavey v. Vance (1887), 56 Ohio St. 162, syllabus (emphasis in original). Both Kent and John Edwards explained that from at least the early 1950's, the people living in the farmhouse on the Spahr property permissively used the driveway for ingress and egress. Further, Thomas Spahr testified that when he began renting the property from the Edwards in 1986, John Edwards explained to him that he could use the driveway that existed between the two houses to access his property. Mr. Spahr's own testimony revealed that his use of the driveway was not adverse, at least up until the time the Beeners purchased the property in 1997. Therefore, we disagree with the trial court's finding of a prescriptive easement.
On the other hand, we find the evidence more conducive to establishing an implied easement in favor of the Spahrs. Implied easements are based upon the principle that when an individual conveys property, he also conveys whatever is necessary for the use and enjoyment of that property. Deyling v. Flowers (1983), 10 Ohio App.3d 19, syllabus, citingTrattar v. Rausch (1950), 154 Ohio St. 286, syllabus. Such easements can arise either by necessity or from existing use. Cyrus Investors, Inc. v.Hoffman (Nov. 26, 1991), Franklin App. Nos. 91AP-378, 91AP-457, unreported, at p. 11, citing Trattar, supra, at p. 292. Although an easement by necessity requires that the easement is strictly necessary for the use and enjoyment of the land, an easement arising from existing use is not subject to such a heightened burden. Martin v. Sheehy (1986),33 Ohio App.3d 332, syllabus. It must be noted, however, that all implied easements are disfavored in the law as being contrary to the rule that written documents speak for themselves. Campbell v. Great Miami AerieNo. 2309, Fraternal Order of Eagles (1984), 15 Ohio St.3d 79, 80. In addition, an unrecorded implied easement cannot be enforced against a bona fide purchaser who has no actual or constructive notice of the easement. Tiller v. Hinton (1985), 19 Ohio St.3d 66, syllabus.
The supreme court defined the elements required to establish an implied easement arising from an existing use as follows:
 (1) A severance of the unity of ownership in an estate; (2) that before the separation takes place, the use which gives rise to the easement shall have been so long continued and obvious or manifest as to show that it was meant to be permanent; (3) that the easement shall be reasonably necessary to the beneficial enjoyment of the land granted or retained; (4) that the servitude shall be continuous as distinguished from a temporary or occasional use only.
Martin, supra, at 335, citing Ciski v. Wentworth (1930), 122 Ohio St. 487, paragraph one of the syllabus. Thomas Spahr rented his property from John Edwards from 1986 until 1997, at which time he purchased it outright. When he first moved onto the property, Edwards explained to Spahr that the driveway could be used for his, as well as other tenants' ingress and egress. Both John and Kent Edwards further testified that the driveway had always been used for ingress and egress by all individuals living or working on the property. Spahr testified that there is another driveway that lies on the south side of the property which he also uses. However, as mentioned previously, an implied easement arising from existing use does not require strict necessity, only reasonable necessity for use and enjoyment of the land. Finally, Spahr testified that he has continually used the driveway since he moved onto the property in 1986. Consequently, the Spahrs have satisfied all four elements of implied easement arising from existing use.
However, the Spahrs cannot claim an implied easement against the Beeners unless they can show that the Beeners had actual or constructive notice of their use. See Tiller, supra. Mr. Spahr testified that he has been using this driveway since he moved onto the property in 1986. Nevertheless, Mrs. Beener testified that although she was aware someone lived in the farmhouse behind their property, she has never seen anyone from that house use the driveway since she first viewed the property. Mr. Beener was not questioned as to whether he had ever witnessed use of the driveway by the Spahrs. Because this issue was not addressed or resolved by the trial court, we will remand for the trial court to determine from the testimony whether the Beeners had actual or constructive notice of the Spahrs' use of the driveway. Accordingly, we reverse the trial court's finding that the Spahrs established a prescriptive easement, and remand to the trial court to resolve the issue of the Beeners' notice which will establish whether an implied easement exists.
The Grass Strip
In its decision, the trial court's only reference to the grass strip located immediately southwest of the gravel driveway was limiting the Becrafts' use to the express terms of the easement. This grass strip encompasses the area originally referred to in the deed of easement, but that deed is now to be reformed to instead specify the gravel driveway. The Becrafts claim they own this strip of land by adverse possession. We agree.
Adverse possession is established when a party proves by clear and convincing evidence exclusive possession which is open, notorious, continuous and adverse for a period of twenty-one years. Grace v. Koch
(1998), 81 Ohio St.3d 577, 579. In order to establish the twenty-one year possession, an individual may "tack" to his period of adverse use, the adverse use by previous owners in privity with him. Lyman v. Ferrari
(1979), 66 Ohio App.2d 72, 76, citing Zipf v. Dalgarn (1926),114 Ohio St. 291, 296. Adverse use can be any use that is inconsistent with the rights of the title owner. Vanasdal v. Brinker (1985),27 Ohio App.3d 298, citing Kimball v. Anderson (1932), 125 Ohio St. 241,244. Moreover, it is irrelevant if everyone believes the owner of the strip of land in question to be the party claiming adverse possession.Id. at 299. This is true because adverse possession protects not only those who knowingly appropriate others' land, but also individuals who honestly enter and possess land in the belief that it is their own.Raymond v. Cary (1989), 63 Ohio App.3d 342, 343; see also Vanasdal,27 Ohio App.3d at 299, citing Yetzer v. Thoman (1866), 17 Ohio St. 130.
John Edwards testified that he always believed that the Becraft property bordered the gravel driveway. For this reason, whoever lived in the house on the Becraft property has always maintained the strip of grass since the houses were built in 1953, without any assistance from the owners of the Beener property. Further, no one ever gave the occupants of the Becraft property "permission" to use that land. Because everyone believed the owners of the Becraft property to be the owners of the grass strip, the use was open, notorious, continuous and adverse from the time the residence was built. To rebut the adverse possession claim, Mr. Beener testified that after he moved in in 1997 and had the property surveyed, he began maintaining that strip of grass. He did admit, though, that the Becrafts have also consistently maintained the area. Because the period of adverse use began in 1953 and continued until 1997, adverse possession was already established by the Becrafts before Beener began caring for that area. Therefore, his maintenance of the area does not negate the Becrafts' adverse possession claim.
In addition, the Beeners argue that the family relationship between the predecessors of both properties casts doubt on the adverse possession claim, and they cite our previous case of Demmitt v. McMillan (1984),16 Ohio App.3d 138 to support this contention. Demmitt provided that when a family relationship existed between the adverse user and the title owner at some point in the twenty-one year period, a heightened burden of clear and convincing evidence is required. Id., at syllabus. However, since Demmitt, the supreme court has held that all adverse possession claims require this heightened burden of proof, regardless of the relationship between the parties. See Grace, supra, at 580. Nonetheless, the Beeners focus on the testimony of John and Kent Edwards that they never intended to take anything from their relatives by caring for the grassy strip. As discussed previously, though, adverse possession also protects those individuals who adversely possess the land because they honestly believe they own it. See Raymond, supra.
Finally, the Beeners allege that adverse possession cannot be established solely by mowing the grass. We disagree. Later cases than those cited by the Beeners have held that adverse possession is established by using the land in any way that the owner would normally use it. See Thompson v. Hayslip (1991), 74 Ohio App.3d 829, 833;Vanasdal, 27 Ohio App.3d at 299. These courts posit that if an individual uses the land as the owner would, the owner would be put on notice of the adverse use. Both Thompson and Vanasdal particularly mention that mowing the grass is sufficient to establish adverse possession over an area of land.
Based on the foregoing discussion, we find that the Becrafts did establish adverse possession over the strip of grass by clear and convincing evidence. We therefore reverse the trial court's holding that the Becrafts' use of the grass strip is limited to the express terms of the easement, and find the Becrafts to be the sole owners of this area.
Beener's Contempt
The Becrafts argue that the trial court erred in failing to find Mr. Beener in contempt of the temporary restraining order and the preliminary injunction. When deciding a motion for contempt, trial courts have sound discretion to determine whether circumstances warrant such a finding.Denovchek v. Bd. of Trumbull Cty. Commrs. (1988), 36 Ohio St.3d 14, 16. Because the purpose of contempt focuses on the court's authority, great emphasis must be placed on the trial court's discretion. Id.
Accordingly, a trial court's decision in a contempt proceeding will not be reversed absent an abuse of discretion. State ex rel. Ventrone v.Birkel (1981), 65 Ohio St.2d 10, 11. An abuse of discretion indicates the trial court's attitude was unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
Although we agree with the Becrafts that some of Mr. Beener's actions could have constituted contempt of the court's orders, we must defer to the discretion of the trial court in determining whether to punish for these actions. After reviewing the entire record, we do not find that the trial court's decision was arbitrary or capricious. Accordingly, the Becrafts' third assignment of error is overruled.
Intentional Infliction of Emotional Distress
The final issue we need to address is the Becrafts' argument that the trial court erred in failing to award damages to Mrs. Becraft for Mr. Beener's intentional infliction of emotional distress. We presume the Becrafts are contending that the trial court's decision was against the manifest weight of the evidence. In this regard, an appellate court will not reverse the trial court's decision as being against the manifest weight of the evidence if it is "supported by some competent, credible evidence going to all the essential elements of the case * * *." SeasonsCoal Co., Inc. v. City of Cleveland (1984), 10 Ohio St.3d 77, 80. In our review, deference must be given to the trial court's determination because the trial judge is in the best position "to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."Id.
The supreme court has adopted the language of the Restatement of the Law 2d, Torts (1965) 71, Section 46(1) defining intentional infliction of emotional distress as: "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." Yeager v. LocalUnion 20, Teamsters, Chauffeurs, Warehousemen Helpers of America
(1983), 6 Ohio St.3d 369, syllabus. In order to establish a claim for intentional infliction of emotional distress, the following elements must be established:
 (1) the defendant either intended to cause emotional distress or knew or should have known that the actions taken would result in serious emotional harm to the plaintiff; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions proximately caused plaintiff's psychic injury; and (4) the mental distress suffered by the plaintiff was serious.
Dycoco v. Guernsey Memorial Hospital (June 15, 2000), Guernsey App. Nos. 99CA06, 99CA10, unreported, at p. 6, citing Piro v. Franklin Twp.
(1995), 102 Ohio App.3d 130, 142.
The Yeager court relied on the language from the Restatement to explain the conduct required as: "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."Id., at 375. Moreover, "liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Id.
In the present case, the Becrafts testified to several incidents where Mr. Beener allegedly caused Mrs. Becraft distress. For instance, Mr. Beener drove his car toward their eleven-year-old son while he mowed the lawn, quickly drove his car up the driveway while Mr. and Mrs. Becraft were walking, making them jump out of the way, and he drove in the Becrafts' grass to pass Mrs. Becraft while she was driving on the driveway. The Becrafts argue that all of these incidents and other similar incidents have caused Mrs. Becraft emotional distress. In support, Mrs. Becraft's doctor testified that she believes Mrs. Becraft is experiencing panic attacks and anxiety, and that the actions described by Mr. Beener could have caused this problem. However, she conceded that her first appointment with Mrs. Becraft was after the lawsuit was filed, and not knowing her health prior to any problems with the Beeners, she could not say to a reasonable degree of medical certainty that those problems caused her anxiety.
Based on the standard of conduct that must be met, we do not find that there was competent, credible evidence to demonstrate that Mr. Beener's actions were "utterly intolerable in a civilized society." Furthermore, we do not have any proof that Mr. Beener's actions were the proximate cause of Mrs. Becraft's anxiety. Accordingly, the trial court's judgment denying damages for intentional infliction of emotional distress was not against the manifest weight of the evidence, and this assignment of error is overruled.
In conclusion, we reverse the trial court's decision denying the Becrafts' motion to amend their complaint and refusing to reform the deed, and remand for the trial court to reform the deed in accordance with this opinion. We also reverse the trial court's decision finding that the Spahrs have a prescriptive easement over the driveway, and remand for the trial court to determine whether the Beeners had actual or constructive notice of the Spahrs' use of the driveway, a finding required to determine if an implied easement has been established. Further, we reverse the trial court's finding that the Becrafts' rights to the strip of grass to the southwest of the driveway is limited by the express terms of the easement and find instead that they have established adverse possession over this area. Finally, we affirm the trial court's decision refusing to hold Mr. Beener in contempt and denying damages to Mrs. Becraft for intentional infliction of emotional distress. Judgmentaffirmed in part and reversed and remanded in part.
 ______________________ BROGAN, J.
WOLFF, J., and YOUNG, J., concur.