DECISION AND JUDGMENT ENTRY
This is an appeal from a Pike County Common Pleas Court judgment, after a trial to the court, in favor of Albert and Ethel Reed, plaintiffs below and appellees herein, on their adverse possession claim against Terrence Smith and Edward Smith, defendants below and appellants herein. The following errors are assigned for our review:
FIRST ASSIGNMENT OF ERROR:
 "THE TRIAL COURT'S FINDING OF AWARDING A TRIANGULAR PIECE OF LAND TO THE PLAINTIFF-APPELLEES THROUGH ADVERSE POSSESSION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
SECOND ASSIGNMENT OF ERROR:
 "THE TRIAL COURT'S AWARDING OF ATTORNEY'S FEES TO THE PLAINTIFF-APPELLEES IS CONTRARY TO LAW AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
THIRD ASSIGNMENT OF ERROR:
 "THE TRIAL COURT'S FAILURE TO AWARD THE DEFENDANT-APPELL[ANTS] DAMAGES IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
A brief review of the facts pertinent to this appeal is as follows. The cause sub judice involves a dispute between two families over a triangular, pie-shaped, strip of land located on the west side of Estep Road in Pee Pee Township of Pike County. In 1946 Appellee Albert Reed acquired approximately two and a half (2½) acres of land lying predominantly on the east side of Estep Road. Reed's neighbors on the west side of Estep Road were Leander and Grace Estep. The disputed strip of land lay at the eastern boundary of the Estep property and took up a portion of the frontage they would have otherwise have had on Estep Road. Reed claimed ownership over the strip of land and the Esteps acknowledged that claim, though it is unclear whether they actually agreed that the Reeds were the owners.
In any event, in the early 1990s the Esteps transferred their land to Mr. Estep's nephew, Appellant Edward Smith. On May 11, 1993, Edward Smith transferred two parcels of land out of that property to Appellant Terrence Smith. Edward Smith also conveyed a sixty (60) foot ingress/egress easement to connect those parcels with Estep Road. That easement traversed the triangular strip of land claimed by Albert Reed. The present controversy began when appellants built a roadway through that easement on the disputed property.
Appellees commenced the action below on August 26, 1997, alleging,inter alia, that they owned the disputed strip of land, either by original conveyance or by adverse possession, and that appellants trespassed on their land and damaged their property by constructing a roadway. They asked, among other things: (1) that title to the disputed strip of land be quieted in their favor; (2) that they recover in excess of $100,000 in compensatory and punitive damages; and (3) that they be awarded attorney's fees. Appellants denied that their neighbors had any ownership interest in the disputed strip of land. Appellants further counterclaimed that title to their own land had been clouded as a result of this lawsuit and asked that such title be quieted in their favor.
The matter came on for a bench trial over several days in the summer, fall and winter of 1999 during which time each side introduced an extensive array of witness testimony and exhibits. First, with respect to the issue of whether the disputed strip of land was part of the original conveyance to Albert Reed, each side presented surveyors who agreed that problems exist with the "closing" of legal descriptions for the properties in that area. Nevertheless, Russell Montgomery testified that from his 1993 survey he determined that the original grant of conveyance to Mr. Reed included the disputed strip of land. Gilbert Smith contradicted this testimony. Smith testified that his survey revealed that Albert Reed owned no land west of Estep Road.
An even bigger dispute arose on the adverse possession issue. Martha Reed (Albert Reed's sister-in-law) testified that everyone in the community regarded Mr. Reed as the owner of the strip of land on the west side of Estep Road and that no other individuals had ever claimed ownership thereof. Ms. Reed recounted that she and her late husband, with her brother-in-law's permission, constructed a small cattle pen on the disputed strip of land which they used for a number of years. This testimony was corroborated by several other members of the Reed family (including two sons and a couple of nephews of Albert Reed) who related how they played on the property as kids, parked vehicles there at different times, grazed goats and helped tend and mow the property.
By contrast, Edward Smith testified that his uncle (Leander Estep) had always claimed ownership of the property adjacent to Estep Road. Mr. Smith related how his uncle had tended and mowed the property and how he had mowed it himself, continuously, every two or three weeks since 1968. The witness conceded that his uncle had been aware of Albert Reed's claim of ownership in the property and that the Reed family had previously used the disputed strip of land for a cattle pen and as a place to park their vehicles. He even admitted that, at one point, he offered to pay Albert Reed $300 for his alleged interest to settle the dispute. Nevertheless, Mr. Smith maintained that he and his uncle had never been put on notice that anyone claimed an adverse interest in their property.
The trial court took the matter under advisement and, on April 25, 2000, rendered a decision in favor of appellees. The court found that the appellees had proven their adverse possession claim by clear and convincing evidence and ordered that title to the disputed strip of land be "quieted in their names." As for any monetary recovery, the court found that appellees failed to prove damages, but that they were entitled to "reasonable attorney fees." Counsel for appellees was directed to submit a proposed final judgment entry, as well as a statement of his fees, for the court's consideration.
Three days later, appellants filed a Civ.R. 52 motion requesting findings of fact and conclusions of law. The court ordered the parties to submit their own proposed findings and, on May 26, 2000, the trial court adopted those findings and conclusions that had been submitted by appellees "as if fully rewritten [there]in." Final judgment was rendered on July 24, 2000, which (1) quieted title to the disputed premises in appellees favor; (2) ruled against appellants on their counterclaim; and (3) ordered appellants to pay appellees' attorney fees in the amount of $4,476. This appeal followed.
 I
We shall jointly address the first and third assignments of error as they both challenge the trial court's judgment as being against the manifest weight of the evidence. Our analysis begins from the premise that, as with any other sort of claim, the party asserting title by adverse possession bears the burden of proving such possession. SeeThompson v. Hayslip (1991), 74 Ohio App.3d 829, 832, 600 N.E.2d 756,758; also see Perry v. Dearth (Jul. 26, 2000), Washington App. No. 99CA26, unreported; Adams v. Zalek (Mar. 14, 2000), Ross App. No. 98CA2460, unreported. The party seeking to assert title by adverse possession must prove, by clear and convincing evidence, exclusive possession and open, notorious, continuous and adverse use for a period of twenty-one (21) years. Grace v. Koch (1998), 81 Ohio St.3d 577, 579,692 N.E.2d 1009, 1011; also see Pennsylvania Rd. Co. v. Donovan (1924),111 Ohio St. 341, 349-350, 148 N.E. 479, 482; Gill v. Fletcher (1906),74 Ohio St. 295, 78 N.E. 433, at paragraph three of the syllabus.
In Crawford v. Matthews (Sept. 21, 1998), Scioto App. No. 97CA2555, we discussed the necessary elements to establish an adverse possession claim:
 "The concepts of `open' and `notorious' use require that the adverse user's actual possession be of a character capable of putting the legal owner on notice of the possession. 1 Curry Durham, Ohio Real Property Law and Practice (5 Ed. 1996) 280, Section 7-2(c). The requirement is for the protection of those against whom possession is claimed to be adverse, to enable them to protect themselves by preventing its continuance. Jennewine v. Heinig (Dec. 29, 1995), Greene App. No. 95CA12, unreported, citing Restatement of the Law 2d, Property (1944), Section 458, Comment h; and Powell, Real Property (1995) 91-18), Section 1013[2][b]. Property is used `openly' when it is used `without attempted concealment,' and it is used `notoriously' when its use is `known to some who might reasonably be expected to communicate their knowledge to the owner if he maintained a reasonable degree of supervision over his premises.' Hindall v. Martinez
(1990), 69 Ohio App.3d 580, 584, 591 N.E.2d 308.
 Use is `continuous' if it is neither interrupted by acts of the owner nor abandoned by the adverse user. Keish v. Russell (Feb. 17, 1995), Athens App. No. 94CA1618, unreported. Such use need not be daily; it is sufficient if it is only occasional. 2 Ohio Jurisprudence 3d (1998) 467, Adverse Possession, Section 36. However, the use must be so `continuous' as to fairly indicate an interrupted use. Id.
 Use is `adverse' when it is without the permission of, and is inconsistent with the rights of, the property owner. Keish v. Russell, (Sept. 11, 1996), Athens App. No. 95CA1686, unreported; 2 Ohio Jurisprudence 3d (1998) 451, Adverse Possession, Section 22. It is not necessary that there be a heated controversy, a manifestation of ill will, or enmity between the parties. 2 Ohio Jurisprudence 3d (1998) 451, Adverse Possession, Section 22. Permissive use, however, is not `adverse' and will never ripen into a prescriptive right. Penn RR. Co. v. Donovan supra, 111 Ohio St. 341 at paragraph one of the syllabus. Whether a use is adverse depends upon the facts of each particular case. Glander v. Mendenhall (1943), 39 Ohio L.Abs. 104, 68 N.E.2d 105."
Other decisions address the "continuous" element for adverse possession. We note that Ohio courts have upheld a finding of adverse possession when the adverse possessor used the land in a manner similar to an actual owner. See Hall v. Cignoni (June 18, 1993), Lawrence App. No. 92CA19, unreported; Fulton v. Rapp (App. 1950), 59 Ohio Law. Abs. 105, 45 O.O. 494, 98 N.E.2d 430; Thompson v. Hayslip (July 19, 1991), Lawrence App. No. 1959, unreported. Occasional use of the land will be sufficient if such use is appropriate for the location of the land. Dreslinski v.Bugary (Mar. 20, 1992), Ashtabula App. No. 91-A-1639, unreported, citing 3 American Jurisprudence 2d (1986), 178-79, Adverse Possession, Section 83. See, also, Davis v. Konjicija (1983), 86 Ohio App.3d 352,620 N.E.2d 1010.
After our review of the record, we conclude that sufficient evidence exists to support the trial court's finding that appellees established title to the disputed strip of land by adverse possession. As mentioned previously, numerous members of the Reed family gave extensive testimony as to the use that had been made of the disputed strip of land in the fifty (50) plus years since Albert Reed had acquired his property. Their testimony, however, was not the only evidence of adverse use. Louise Brannum, a relative of the Estep family who once lived in the area in the 1960s, testified that it was common knowledge that Albert Reed owned property on the west side of Estep Road. The witness stated that Leander Estep acknowledged Mr. Reed's ownership of the land in question and had previously offered to buy the property from him, but to no avail. Wilburn Bucy, whose grandfather was Albert Reed's predecessor in title, testified that his grandfather also claimed ownership of a "triangle piece" of land on the west side of Estep Road. Mr. Bucy (who was 73 at the time of the hearing) recalled that when he was a child his grandmother had a "root cellar or summer cave" on the property where she kept cream and milk and that his grandfather had chopped corn and fodder from the disputed area.
Additional support for appellee's adverse possession claim can also be found in Appellant Edward Smith's testimony. Mr. Smith testified that his uncle (Leander Estep) knew that Albert Reed claimed ownership of the disputed strip of land and that he had been aware of that claim since the 1950s or 1960s. Mr. Estep was also alleged to have been upset several times since the late 1960s because the Reeds were burning trash on the disputed land. Nevertheless, it was uncontroverted that he took no legal action to stop them or to assert his own rights in the property. Finally, Mr. Smith conceded that he also knew that the Reed family over the years used the strip of land as a place to park their cars and as a cattle pen.
It is axiomatic that a reviewing court will not reverse a judgment of the trial court as being against the manifest weight of the evidence so long as it is supported by some competent and credible evidence. SeeGerijo, Inc. v. Fairfield (1994), 70 Ohio St.3d 223, 226, 638 N.E.2d 533,536; Vogel v. Wells (1991), 57 Ohio St.3d 91, 96, 566 N.E.2d 154, 159;C.E. Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279,376 N.E.2d 578, at the syllabus. This standard is highly deferential and even "some" evidence is sufficient to sustain the judgment and prevent a reversal. Barkley v. Barkley (1997), 119 Ohio App.3d 155, 159,694 N.E.2d 989, 992; also see Living Waters Fellowship, Inc. v. Ross
(Oct. 23, 2000), Scioto App. No. 00CA2714, unreported; Simms v. Heskett
(Sep. 18, 2000), Athens App. No. 00CA20, unreported. After our review of the record, we conclude that the evidence adduced below was sufficient for the trial court to find for appellees on their claim of adverse possession and against appellants on their action to quiet title in the same property.
To be sure, we recognize that conflicting evidence was adduced during the course of the trial. Mr. Smith testified that Leander Estep claimed all the property adjacent to Estep Road. He also asserted that, aside from the Reed family, nobody else in the area ever regarded Albert Reed as the owner of the disputed strip of property. However, we point out that the weight to be afforded the evidence and the determination of witness credibility are generally issues that the trier of fact must resolve. See Cole v. Complete Auto Transit, Inc. (1997),119 Ohio App.3d 771, 777-778, 696 N.E.2d 289, 293; also see generallyState v. Frazier (1995), 73 Ohio St.3d 323, 339, 652 N.E.2d 1000, 1014;State v. DeHass (1968), 10 Ohio St.2d 230, 277 N.E.2d 212, at paragraph one of the syllabus. The trial court was free to believe all, part or none of the testimony of any witness who appeared before it. Rogers v.Hill (1998), 124 Ohio App.3d 468, 470, 706 N.E.2d 438, 439; Stewart v.B. F. Goodrich Co. (1993), 89 Ohio App.3d 35, 42, 623 N.E.2d 591, 596;also see State v. Nichols (1993), 85 Ohio App.3d 65, 76, 619 N.E.2d 80,88; State v. Harriston (1989), 63 Ohio App.3d 58, 63, 577 N.E.2d 1144,1147. Evidently, the court afforded more weight to the testimony of those appearing on behalf of the Reed family than to appellants. This was well within the trial court's province. The trial court viewed the witnesses, and observed their demeanor, gestures and voice inflections and use those observations in weighing the credibility of their proffered evidence.See Myers v. Garson (1993), 66 Ohio St.3d 610, 615, 614 N.E.2d 742, 745;Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80,461 N.E.2d 1273, 1276. For all these reasons, we find no merit in appellants' first and third assignments of error and they are accordingly overruled.
 II
Appellants argue in their second assignment of error that the trial court erred in ordering them to pay appellees' legal fees. We agree with appellants.
It is well settled law that, in the absence of statutory authorization, or a finding of bad faith, a prevailing party cannot recover attorney fees. See Pegan v. Crawmer (1997), 79 Ohio St.3d 155,156, 679 N.E.2d 1129; State ex rel. Pennington v. Gundler (1996),75 Ohio St.3d 171, 173, 661 N.E.2d 1049, 1051; Vance v. Roedersheimer
(1992), 64 Ohio St.3d 552, 556, 597 N.E.2d 153, 156; State, ex rel.Durkin v. Ungaro (1988), 39 Ohio St.3d 191, 193, 529 N.E.2d 1268, 1270. Appellees cite to no statutory authority which would allow them to recover their attorney fees in this case and we have found nothing to that effect in our own research. We further note that the trial court made no finding of "bad faith" on the part of appellants in its decision or in its various judgment entries below. Thus, the trial court erred by ordering appellant's to pay appellees' legal fees. Thus, appellees' second assignment of error is well taken and, accordingly, is hereby sustained.
Having sustained appellants' second assignment of error, the judgment of the trial court is hereby modified so as to delete the $4,476 in attorneys fees awarded to appellees. The remainder of the judgment is then affirmed as modified.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed as modified and that the parties split the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Pike County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J. Evans, J.: Concur in Judgment Opinion.